[No. 42706. En Banc. September 6, 1973.]

MORRIS J. LOVELESS et al., *Respondents*, v. GEORGE F. YANTIS, JR., et al., *Appellants*.

*Smith Troy, Prosecuting Attorney,* and *Jane Dowdle Smith, Deputy,* for appellants Yantis et al.

*John S. Robinson* and *Gordon, Thomas, Honeywell, Malanca, Peterson, O'Hern & Johnson,* by *James A. Furber,* for appellants Cooper Point Association et al.

*Ernest L. Meyer,* for respondents.

*Charles B. Roe, Jr.,* amicus curiae.

UTTER, J.—This is an appeal from a superior court judgment which granted preliminary approval to a plat filed by Morris J. Loveless, affecting property on Cooper Point in Thurston County. The court declared the Thurston County commissioners' refusal to grant approval arbitrary and capricious.

The basic issues raised are: (1) whether the intervenor-

appellants[1] are entitled as a matter of right to intervene; (2) whether the offered plat on its face violates the county zoning ordinances; (3) whether the incomplete record of the county proceedings on this matter brought before the court was inadequate to support the court's judgment; and (4) whether an environmental impact statement pursuant to RCW 43.21 is a necessary prerequisite for preliminary approval of the plat.

Each issue is answered in the affirmative and we reverse the trial court.

The property in question is on a glacially-formed peninsula at the southern extremity of Puget Sound, known as Cooper Point. The point is approximately 4 miles wide at its base, narrows to less than a mile at its northern tip, and extends 7½ miles into the salt water. There is extensive marine life and a wide assortment of vegetation and wildlife. The peninsula rises steeply from the coastal beaches and its interior is primarily a rolling terrace.

Recently a new state college has located toward the point's base. The respondent-Loveless' project, called "By the Sea", is proposed for the narrow tip of the point and would consist of multi-family condominiums.

On or about March 3, 1972, respondent filed an application with the Thurston County Planning Department (pursuant to county ordinance No. 3829), for preliminary approval of this plat. A public hearing was held by the Thurston County Planning Commission on the application and a recommendation that the plat be denied was made on April 27, 1972. The recommendation failed to provide the required reasons for denial and when the county commissioners received the matter (pursuant to RCW 58.17.100), they consulted with the applicant and by mutual agree-

---

[1]The intervenors are the Cooper Point Association, composed of Cooper Point area owners and residents who seek to insure the orderly development of the point so that the area's unique amenities will not suffer; the Cooper's Point Water Company, Inc., composed of landowners sharing in a common well and water system on the point; and Katherine Partlow Draham, who owns and operates a farm adjacent to a portion of the platted property here at issue.

ment returned it to the planning commission for further consideration and with instruction to state specific reasons if the plat was again rejected.

A subcommittee of the planning commission recommended preliminary approval; however, the planning commission referred the matter back to committee for preparation of an environmental impact statement. At this point in the planning commission's review, respondent asked the county commissioners to reconsider the matter, arguing that no environmental impact statement was required. A public hearing was held by the commissioners on August 9, 1972, and an order denying the application for the preliminary approval of the plat was entered on August 14, 1972.

Respondent appealed this order to superior court. The Cooper Point Association and Cooper's Point Water Company, Inc. appeared at an October 9, 1972 hearing requesting permission to intervene. They were denied intervention but permitted to submit briefs and argue the merits of the case as amici curiae. Court then recessed, and before reconvening, Mrs. Katherine Partlow Draham filed a separate motion to intervene. On December 6, 1972, all motions to intervene were again denied, but all were permitted to argue as amici curiae. The court then found the failure of the commissioners to provide any reason for refusing to grant preliminary approval to the plat constituted an arbitrary and capricious decision and granted the preliminary approval sought.

Appellant-commissioners began an appeal to the Court of Appeals, while the intervenor-appellants petitioned the Supreme Court for a writ of certiorari authorizing them to intervene. By order of the Chief Justice the petition was granted, those seeking to intervene were permitted to appear on appeal, and the two appeal processes were consolidated into this review.

The Cooper Point Association, the Cooper's Point Water Company, and Katherine Partlow Draham should have been allowed to intervene as a matter of right. This ques-

tion is controlled by Civil Rule for Superior Court 24(a).[2] The trial court found those seeking to intervene were not timely, had no claim as a matter of right, and were not necessary or proper parties to the cause. We find it necessary to rule only on the issue of intervention as a matter of right.

CR 24(a) requires an intervenor to show that he claims an interest relating to the property that is the subject of the action; that disposition of the action may impair his ability to protect that interest; that his interest is not being adequately represented by existing parties; and that his appeal is timely.

■ Each of the intervenors has the necessary interest in the property. The interest of the Cooper's Point Water Association and Katherine Partlow Draham is direct as property owners "who feel themselves aggrieved" and who would have had a right to appeal the ruling of the commission had it been adverse to them. They could, in addition, have shown special damages by way of diminution in value of their property resulting from the action of defendants. *Park v. Stolzheise*, 24 Wn.2d 781, 167 P.2d 412 (1946).

■ The Cooper Point Association, likewise, has an interest in the property. An organization whose members are injured may represent those members in proceedings for judicial review. *NAACP v. Button*, 371 U.S. 415, 428, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963). With the members of the association here all residents of the area affected, the association has a direct enough interest to challenge the administrative action. *Sierra Club v. Morton*, 405 U.S. 727, 31 L. Ed. 2d 636, 92 S. Ct. 1361 (1972).

The intervenors are likewise in a position where the

---

[2]CR 24(a). "Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

disposition of the action may impair their ability to protect their interests. Our ruling regarding the nature of a preliminary plat establishes that it is not merely an insignificant stage of the proceedings without real consequence. The failure to litigate environmental and zoning issues at this stage could result in decisions being reached by the county that have a binding impact on intervenors without their consent or participation.

Intervenor-appellants are not per se adequately represented by the fact that the county is appealing. Actual proof in this case of that fact is shown by the county's failure to urge any of the grounds upon which we base our ruling.[3] In addition, the county must consider the interests of all the residents of the county, where the affected property owners represent a more sharply focused and sometimes antagonistic viewpoint to that of the county as a whole. *Herzog v. Pocatello*, 82 Ida. 505, 356 P.2d 54 (1960); *Bredberg v. Wheaton*, 24 Ill. 2d 612, 182 N.E.2d 742 (1962).

The motions to intervene were also timely. CR 24(a) should be interpreted to allow an intervention of right unless it would work a hardship on one of the original parties. *Wolpe v. Poretsky*, 144 F.2d 505 (D.C. App. 1944), *cert. denied*, 323 U.S. 777, 89 L. Ed. 621, 65 S. Ct. 190 (1944); *Esso Standard Oil Co. v. Taylor*, 399 Pa. 324, 159 A.2d 692 (1960).

The failure of intervenors to follow Civil Rule for Superior Court 6(d), requiring service of motions 5 days before the time specified for the hearing, was not fatal in this case. The rule is not jurisdictional. Where the party had actual notice and time to prepare to meet the questions raised by the motions of the adversary, deviation from the time limit may be permissible. *Herron v. Herron*, 255 F.2d

---

[3]The county solely contended that the commissioners' decision was not arbitrary and capricious and that if so, the trial court must remand the matter back to the commissioners rather than itself granting the preliminary approval. Moreover, on the issue of whether a zoning violation exists in this case, the county and intervenors are at odds on whether the plat even raises a zoning question.

589 (5th Cir. 1958); 4 Wright & Miller, *Federal Practice & Procedure* § 1169, at 644 n.30 (1969).

There was ample notice and time to prepare here. The appearance of intervenors as amici curiae gave respondent adequate opportunity to know the issues raised and be prepared to meet them. The motion to intervene is granted in this appeal and as a matter of right should have been granted in the trial.

Respondent's submitted plat, on its face, violates the existing Thurston County zoning ordinance (No. 3744) in two respects. First, the proposal contemplates structures which are not permitted in a suburban-agriculture use district like northern Cooper Point, and it contemplates a "Planned Area Development" which is also not permitted.

A preliminary plat is defined by Thurston County ordinance No. 3829, section 2, as

> A neat and approximate drawing of the proposed layout of streets, blocks, lots and *other elements* of a plat or subdivision which shall furnish the basis for the Planning Commission's approval or disapproval of the general layout of the plat or subdivision.

(Italics ours.) This is similar to RCW 58.17.020(4). The documents filed by respondent show not only the proposed streets but the height and location of the structures to be served by these streets. The plat layout, therefore, related elements of the proposed subdivision, apparently in an effort to submit a "Planned Area Development."

Some of the proposed structures in the plat were 40, 50, and 110 feet high. Given this detail, the administrative body reviewing the plat was on notice that possible violations of the zoning prohibition that "No building or structure shall exceed two (2) stories or thirty-five (35) feet in height, whichever is less" in a suburban-agriculture zone existed. Respondent contends any height violations are immaterial at the preliminary approval stage of a plat, since a preliminary plat is only an approximate drawing of streets, blocks and lots with the question of zoning compliance deferred to a later stage. We disagree.

■ It is true that a purpose of a preliminary plat is to secure approval of the street layout and location "design" of a proposal. Essentially, the plat provides information not specified in ordinance regulations. 3 A. Rathkopf, *The Law of Planning and Zoning,* ch. 71, § 5 (1972). The importance of this preliminary approval procedure is indicated by Rathkopf at page 71-34:

> Where this two-step procedure is in effect, consideration of the preliminary plat must result either in its approval as submitted, or a statement that it will be approved if it is modifed in the manner specified by the planning board, or in *its disapproval where conditions or infirmities appear or exist that would preclude any possibility of approval.*
>
> The planning board cannot modify the preliminary plat and then disapprove a final plat conforming to the plat modified as prescribed by the board.

(Italics ours.)

Therefore, since any approval or modification by the reviewers of a preliminary plat is binding where infirmities appear that would preclude any possible approval (such as clear zoning violations), it is incumbent upon the planning body to reject the plat. The planning commission is directed when considering preliminary plats of proposed subdivisions

> to assure conformance of the proposed subdivision to the general purposes of the comprehensive plan and to planning standards and specifications as adopted by the . . . county.

RCW 58.17.100.

Here, the plat's layout was more than just a drawing of streets and lot lines, and the indicated height of the proposed structures, violative of the height regulations, may not be approved.

It appears that respondent proceeded under section 11A of county platting ordinance No. 3829 which sets forth procedures for those seeking a "Planned Area Development" (P.A.D.). The pertinent county zoning ordinance (No.

3744) provides no authority for a P.A.D. in a suburban-agriculture use district.

■ A "Planned Unit Development" (P.U.D.), which is significantly different from the requested P.A.D., is permitted by the zoning ordinance. A P.U.D. has been defined as a self-contained community

> built within a zoning district, with the rules of density controlling not only the relation of private dwellings to open space, but also the relation of homes to commercial establishments such as theaters, hotels, restaurants, and quasi-commercial uses such as schools and churches.

*Cheney v. Village 2 at New Hope, Inc.*, 429 Pa. 626, 630, 241 A.2d 81 (1968). A P.A.D., on the other hand, permits a group of structures to be built together in a more pleasing and practical manner than might be permitted under the restrictions of a subdivision and platting ordinance. Such an ordinance does not allow structures unauthorized by zoning regulations. The lack of enabling regulations for a P.U.D. is also fatal to the preliminary plat in this case.

We therefore conclude the plat cannot be granted preliminary approval since on its face it violates the controlling zoning ordinances.

The essence of the trial court's ruling was that the commissioners' decision was arbitrary and capricious. We find it impossible to intelligently review the commissioners' decision because of an incomplete and inadequate record.

■ Courts reviewing the proceedings of planning commissions and county commissioners in zoning cases are normally restricted to a consideration of the record made before those groups. *Bishop v. Houghton*, 69 Wn.2d 786, 420 P.2d 368 (1966); RCW 58.17.100. Incomplete records make appellate review impossible and where a "full and complete transcript of the records and proceedings had in said cause" is ordered by the superior court and cannot be furnished, the actions of those boards have been vacated. *Beach v. Board of Adjustment*, 73 Wn.2d 343, 438 P.2d 617 (1968). Such is the case here.

The hearings before the planning commission could not

be accurately reproduced as the tapes made were unclear. The tapings of the county commissioners' hearings were also too unclear to permit a complete, accurate reproduction. We are thus presented with a conspicuously incomplete record to review. *See Nesqually Mill Co. v. Taylor,* 1 Wash. Terr. 1 (1854).

The problem is similar to that noted in *Battaglia v. O'Brien,* 59 N.J. Super. 154, 173, 157 A.2d 508 (1960), where the court noted:

in view of the unavailability of the basic records, we are in no position to determine whether there has been "strict conformity with the procedural and substantive terms of the statute," nor are we able to determine whether the municipal action was arbitrary, capricious or a manifest abuse of discretionary authority.

In an identical quandary, the court in *Russo v. Stevens,* 10 Misc. 2d 530, 532, 173 N.Y.S.2d 344 (1958), stated:

no adequate or intelligent judicial review is possible unless all the essential evidentiary material upon which the administrative agency predicates a quasi-judicial determination is in the record and before the court.

There is thus no legal basis by which the trial court below or we on appellate review can determine whether the commissioners' rejection of the respondent's plat was unlawful.

The trial court concluded an environmental impact statement was unnecessary for the preliminary approval of respondent's plat. Although our resolution of the preceding issues does not require us to necessarily reach this question, we do so for the guidance of the parties in light of the possible revision and resubmission of the plat.

■ The facts of this case necessitate an environmental impact statement pursuant to the State Environmental Policy Act of 1971 (SEPA), RCW 43.21C, because the decision to grant preliminary approval of the plat for the contemplated project constitutes a major action significantly affecting the quality of the environment. *Eastlake Community Council v. Roanoke Associates, Inc.,* 82 Wn.2d 475,

487-98, 513 P.2d 36 (1973); *Stempel v. Department of Water Resources,* 82 Wn.2d 109, 508 P.2d 166 (1973).

In *Eastlake* and *Stempel* we recognized the vigorous mandate the legislature directed at governmental bodies to evaluate environmental and ecological factors in their major actions. The case now before us reveals the ideal factual setting for early, and thereby meaningful, environmental review.

No party to this appeal asserts that the project will not significantly affect the environment. Nor is there any question but that the preliminary approval of a plat involves discretion and in this case is nonduplicative. Therefore, the issuance of a preliminary approval to the respondent's plat constitutes a "major action" significantly affecting the environment so as to require an environmental impact statement.

In *Eastlake,* at pages 490-92, we set forth the elements necessary to establish a "major action." We therein indicated that if the governmental action "involved a discretionary nonduplicative stage" of the government's approval, SEPA would apply where the considered project significantly affects the environment. The preliminary approval of the plat is a discretionary act not mandatory under the Thurston County ordinance, since this governmental action could have resulted in a denial of the plat.

Where choice exists there is discretion and the fact that previous to SEPA the choice could be solely based on narrow or limited evaluative points set forth in an ordinance or statute is immaterial. "It is no answer to this finding of discretion in the renewal process that the department is bound and limited in its considerations to the permit renewal provisions of the Seattle code. Such a claim was raised and rejected in *Stempel* . . ." 82 Wn.2d at 492.

We emphasize, however, that not all discretionary actions trigger SEPA provisions. Not only must the action significantly affect the environment, but it must be nonduplicative. Therefore, if environmental issues have previously been considered or no new information or developments

have intervened since the last "major action", a new or revised impact statement is not necessary. SEPA does not mandate bureaucratic redundancy but only that the heretofore ignored environmental considerations become part of normal decision making on major actions.

The only argument raised against requiring an environmental review here is that it would be premature, as this stage is very early in the project's life. This contention was rejected in *Eastlake* where we stated, at page 492:

> [I]t is no answer to the application of SEPA, to claim the renewal of a building permit is a modest exercise in a long process. Governmental action in approving a long-term project may occur at various intervals during the life of the project with various degrees of significance. It is unquestionable that numerous, modest and common governmental actions may be as damaging to the environment as a single, vigorous and critical action.

We further emphasized, at page 489: "There may exist several phases or stages of decision making for any one project and each stage, if 'major', requires an environmental impact statement."

Each stage of governmental action may focus on distinct environmental concerns, thus providing for a more narrow evaluation. In this case, it will be of benefit to the public and the developer that an environmental review can be made on the "design" matters revealed in preliminary plats. Choices exist and crisis decision making and catastrophic environmental damage can be avoided by early deliberation here. Also, given this early stage, the application of SEPA would result in minimizing investment costs if the decision is abandonment or alteration.

The need for an early inquiry into environmental matters at the platting stage is emphasized by RCW 58.17.110 which sets forth the responsibility of the county legislative body on these matters. It requires that body to determine, among other things, if "the public use and interest will be served by the platting of such subdivision . . . ". For either the planning commission or county commissioners to

determine this question, they must have before them, in major actions, an environmental review of the project. As previously indicated, it may well be that at the preliminary stage of plat submission, all environmental impacts and ramifications cannot be known or answered. Yet, the environmental concerns raised by the plat must be reviewed. If only the street layout is indicated, its impact should be studied. In this case, enough details of the broad project can be readily gleaned from the submitted plat to provide a broader environmental review on the overall project itself.

We recognized in *Eastlake* that SEPA is designed to avoid crisis decision making by requiring meaningful early evaluations of environmental matters. This state policy recognizes that the threat today to the environment is not its sudden destruction but its progressive degradation. Environmental deliberation, not default, is mandated by SEPA and such deliberation is required here.

The order of the superior court is reversed.

HALE, C.J., FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, and BRACHTENBACH, JJ., concur.