[No. 84831-9.   En Banc.]
Argued May 26, 2011.      Decided December 15, 2011.

JZ KNIGHT, *Petitioner*, v. THE CITY OF
YELM ET AL., *Respondents*.

*Keith E. Moxon* (of *GordonDerr LLP*) and *Michael B. King* (of *Carney Badley Spellman PS*), for petitioner.

*Richard L. Settle, Roger A. Pearce,* and *Patrick J. Schneider* (of *Foster Pepper PLLC*); *Kathleen Callison* (of *Law Office of Kathleen Callison PS*); and *Curtis R. Smelser, Averil B. Rothrock, Colin J. Folawn,* and *Aaron M. Laing* (of *Schwabe Williamson & Wyatt PC*), for respondents.

*Rachel P. Osborn* and *David L. Monthie* on behalf of Center for Environmental Law and Policy, amicus curiae.

¶1 WIGGINS, J. — In 2007, five developers filed applications with the city of Yelm (City) for preliminary plat approval of proposed subdivisions. The only developer still party to this action, TTPH 3-8 LLC (Tahoma Terra), sought approval to develop 32 acres into residential lots. After a hearing examiner granted Tahoma Terra preliminary plat approval, JZ Knight, a nearby property owner and senior water rights holder, appealed to the Yelm City Council (City Council), arguing the hearing examiner's conditional approval of the plats erroneously allowed the developers and the City to delay showing adequate water provisions for the subdivision until the building permit stage. The City Council affirmed the preliminary plat approvals, and Knight filed an action in Thurston County Superior Court under the Land Use Petition Act (LUPA), chapter 36.70C RCW. This court must decide whether Knight had standing to bring the LUPA action. We hold that Knight established that the land use decision is likely to prejudice her water rights and satisfies the statutory standing requirement. We reverse the Court of Appeals.

## FACTS

¶2 JZ Knight owns property approximately 1,300 feet from the closest of the proposed subdivisions. To serve her property, Knight owns surface water rights to Thompson Creek and operates a domestic water system that is authorized to use groundwater under a water rights certificate. The City's wells and Knight's groundwater rights draw from the same aquifer, and Thompson Creek is also in hydraulic continuity with the City's wells.

¶3 At the time it applied for preliminary plat approval, Tahoma Terra had an approved conceptual master site plan and final master site plan pursuant to Yelm Municipal Code (YMC) 17.62.050-.070. Knight's attorney participated in the public hearing on the preliminary plat approval and presented a letter to the hearing examiner alleging that the

City had overcommitted its water supply and did not have adequate water provisions to support the proposed developments, including Tahoma Terra.[1] Knight asked the hearing examiner to deny the preliminary plat application or at least delay approval until the City demonstrated it had sufficient water rights approved by the Department of Ecology (DOE) to support the proposed developments. The City's director of community development stated that, though the City, as water purveyor, does not issue itself letters of water availability, the City had determined it could serve the water needs of the subdivisions, if approved. The hearing examiner left the record open to allow Tahoma Terra and the City to respond to Knight's argument, and, in posthearing submissions, Tahoma Terra and the City provided evidence of the City's water rights, current demand, and projected demand. The parties also submitted evidence of water rights conveyances and transfers by Tahoma Terra to the City that would purportedly provide sufficient water to serve the planned subdivision.

*Hearing examiner's approval of the preliminary plats*

¶4 The hearing examiner granted conditional preliminary plat approval to Tahoma Terra on October 9, 2007. Responding to Knight's claim that Tahoma Terra and the City must present evidence of adequate water supplies at the preliminary plat approval stage, the hearing examiner concluded

> that concurrence,[2] to include the provision of potable water and fire flow, must occur at the final binding site plan approval

---

[1] The letter specifically claimed that Knight's property interests had been adversely affected by the development activities. Knight argued that the City's analysis of water availability for the proposed subdivision was woefully inadequate and that the City had not yet even applied for Department of Ecology approval for two conveyances that the City claimed would provide water for the Tahoma Terra development. Knight also raised traffic and storm water concerns.

[2] " 'Concurrency' means a determination that the facilities necessary to serve a proposed land development are in place or planned for and properly funded with a reasonable expectation that the facilities will be in place at the time needed to preserve adopted levels of service." YMC 15.40.010.

and/or upon submittal of an application for a building permit. At preliminary binding site plan approval, an applicant must show a reasonable expectancy that the water purveyor (in this case the City) will have adequate water to serve the development upon final approval.

Clerk's Papers (CP) at 1268. The hearing examiner concluded that the Growth Management Act (ch. 36.70A RCW), the state subdivision act (ch. 58.17 RCW), and the municipal code require an applicant to show adequate provision of water by the time of occupancy, not at the preliminary plat approval stage. The hearing examiner concluded that the City had met its burden to show a reasonable plan to provide water service.[3]

¶5 Knight moved for reconsideration. The hearing examiner denied the motion but added new findings, including:

*While State law and the [YMC] require potable water supplies at final plat approval and building permit approval, the Examiner has added a condition of approval requiring such.* However, the balance of the conditions of approval requested by [Knight's attorney] in his response are beyond the Examiner's authority and interfere with the City's ability to manage [its] public water system. Furthermore, the proposed conditions require actions by the City beyond the control of the applicant and are therefore not proper as the applicant cannot require the City to take such actions. These conditions would prohibit the applicant from getting final approval of its project even if it had satisfied all requirements for final plat approval.

*Id.* at 1283 (emphasis added). The hearing examiner also added a condition of approval:

---

[3] The dissent asserts incorrectly that "[t]he hearing examiner found that the city of Yelm (City) obtained sufficient water rights from the Nisqually Golf and Country Club, the Dragt farm, and the McMonigle farm." Dissent at 349. To the contrary, the examiner found only that "upon transfer of the golf course and McMonigle water rights and by securing a new water right in 2012, the total cumulative water rights available to the City will far exceed the cumulative water demand." CP at 1270. The examiner found that the City had a "reasonable expectancy" of successfully transferring these water rights and obtaining sufficient water. *Id.* at 1275.

The applicant must provide a potable water supply adequate to serve the development *at final plat approval and/or prior to the issuance of any building permit* except as model homes as set forth in Section 16.04.150 YMC.

*Id.* at 1284 (emphasis added). This condition of approval, specifically the hearing examiner's use of "and/or" and the indication that Tahoma Terra and the City could delay showing an adequate supply of water until the building permit stage, became the basis of Knight's appeal.

*City Council approval of the preliminary plat*

¶6 Knight appealed the hearing examiner's decision to the City Council, alleging multiple errors. On February 12, 2008, the City Council passed Resolution 481, a decision that "affirmed and amended" the hearing examiner's decision approving Tahoma Terra's preliminary plat application. Resolution 481's conclusion of law 3 stated:

JZ Knight has not shown that she will actually suffer any specific and concrete injury in fact, within the zone of interests protected by the legal grounds for her appeals, relating to the sole issue raised by her appeals, whether the appropriate provision for potable water has been made for the proposed developments. *Therefore, Knight is not an aggrieved person with standing to appeal the Examiner's decision to the City Council.*[4] Notwithstanding the City Council's conclusion that Knight lacks standing to appeal, the City Council contingently decides Knight's appeals so that remand and rehearing will not be necessary if, in the future, there is a final judicial determination that Knight had standing to bring these appeals.

*Id.* at 26 (emphasis added). Resolution 481 also states, in relevant part:

The exact quantity of water rights that the City currently holds, which recently has been disputed by Knight, is immate-

---

[4] YMC 2.26.150 allows "any aggrieved person or agency of record" to appeal a decision by the hearing examiner to the city council. The code does not define "aggrieved person."

rial because the City presented evidence, upon which the Hearing Examiner reasonably relied, that substantial additional water rights have been obtained by the City and that their transfer is reasonably expected to be approved [by] the State Department of Ecology (Ecology), and that substantial new water rights are the subject of water rights applications pending before Ecology. On the basis of such evidence, the Hearing Examiner concluded that the requirements of Section 58.17.110 RCW and Sections 15.40.010 and .020 YMC were satisfied by evidence supporting a reasonable expectation that ample water will be available at the time that water is required upon connection and entered written findings that appropriate provision was made for potable water.

. . . The City has made appropriate findings of water availability at the appropriate points in the application process. . . .

*Id.* at 28. The City Council resolution did not explicitly require the City to show adequate water provisions at the final plat approval stage.

### Knight's LUPA petition

¶7  Pursuant to LUPA, chapter 36.70C RCW, Knight filed a land use petition in Thurston County Superior Court challenging the City's preliminary plat approval. Section 6 of Knight's petition alleged facts demonstrating Knight's standing to seek judicial review under RCW 36.70C.060. Specifically, Knight alleged she owns undeveloped property in Yelm and has an interest in obtaining water connections when she develops the property. Additionally, Knight alleged she has DOE-approved senior water rights that would be directly and adversely affected by the City's approval of the preliminary plats. Section 7 of Knight's petition, entitled "A Separate and Concise Statement of Each Error Alleged to Have Been Committed," contained 10 assignments of error, but did not assign error to the City Council's conclusion that she lacked standing under the municipal code to appeal the hearing examiner's decision.

¶8  Knight asked the superior court to reverse the preliminary plat approval, claiming (1) that a finding of appropriate

water provisions at the preliminary plat approval stage required the City to condition approval on a determination of adequate water supply at final plat approval stage rather than at the building permit stage and (2) that a determination of adequate water supply at the final plat approval stage must be based on sufficient DOE-approved water rights held by the City to serve all approved development.

¶9 Tahoma Terra and the City filed motions to dismiss Knight's appeal, arguing that she lacked standing under LUPA and that her failure to assign error to the City Council's finding she lacked standing divested the superior court of jurisdiction. The superior court denied the motions to dismiss and later denied Tahoma Terra and the City's motion for summary judgment. At oral argument, the parties agreed to remove "/or" from the hearing examiner's approval condition—the language in the preliminary plat approval that indicated the City could delay a showing of potable water supply until the building permit stage. The court found that the condition including "and/or" was an erroneous interpretation of the law. The court concluded that RCW 58.17.110 and YMC require the City to make findings of "appropriate provisions" for potable water before final plat approval and cannot delay the showing until the building permit stage. CP at 1564. As to Knight's second claim, the court found that the issue of what constitutes a showing of "appropriate provisions" was not ripe for decision because circumstances could change before the final plat approval stage.[5] Id.

¶10 Over the City's objection that the superior court did not have the authority to enter findings of fact and conclusions of law because it was sitting in an appellate capacity to decide the LUPA petition, the court signed Knight's

---

[5] While concluding the issue of what constitutes a showing of "appropriate provision" was not ripe, the superior court noted that "[i]f the determination were to be made today on this record," the court would find the City's current showing of water expectations insufficient. CP at 1564.

proposed judgment and findings of fact and conclusions of law with only minor changes. The final judgment granted Knight's LUPA petition, "reversed" the matter and remanded to the City Council for modification of the "and/or" condition of approval, and granted notice rights to Knight regarding future final plat approvals. *Id.* at 1565.

¶11 Tahoma Terra and the City appealed. In an unpublished decision, the Court of Appeals held that Knight lacked standing under YMC 2.26.150 and under RCW 36.70C.060 because her injuries were "too remote." *Knight v. City of Yelm*, noted at 155 Wn. App. 1027, 2010 WL 1454096, at *7, 2010 Wash. App. LEXIS 750, at *22. The court also awarded attorney fees to Tahoma Terra and the City pursuant to RCW 4.84.370. The court affirmed Tahoma Terra's preliminary plat approval, reversed the superior court, and dismissed Knight's LUPA petition. *Id.* We granted Knight's petition for review. *Knight v. City of Yelm*, 170 Wn.2d 1002, 245 P.3d 226 (2010).

## ANALYSIS

¶12 While this case comes before us under LUPA, it arises in the context of a local land use decision governed by chapter 58.17 RCW, the subdivision act. The subdivision of land "is a matter of state concern" to be "administered in a uniform manner by cities, towns, and counties throughout the state." RCW 58.17.010. Among other reasons, the legislature enacted chapter 58.17 RCW "to facilitate adequate provision for water, sewerage, parks and recreation areas" and "to provide for the expeditious review and approval of proposed subdivisions which conform to zoning standards and local plans and policies." *Id.* Every subdivision, with limited exceptions not relevant to this case, must comply with chapter 58.17 RCW. RCW 58.17.020, .030.

¶13 Subdivision approval proceeds in two steps—preliminary plat[6] approval and final plat[7] approval. At the preliminary plat approval stage, the local legislative body with authority to approve a plat must "inquire into the public use and interest proposed to be served by the establishment of the subdivision" and determine "[i]f appropriate provisions are made for . . . the public health, safety, and general welfare [and] potable water supplies . . . ." RCW 58.17.110(1). "A proposed subdivision . . . *shall not be approved*" unless the legislative body "makes written findings that: (a) Appropriate provisions are made for the public health, safety, and general welfare and for . . . potable water supplies . . . ; and (b) the public use and interest will be served by the platting of such subdivision . . . ." RCW 58.17.110(2) (emphasis added). "When the legislative body . . . finds that the subdivision proposed for final plat approval conforms to all terms of the preliminary plat approval, and that said subdivision meets the requirements of this chapter, other applicable state laws, and any local ordinances adopted under this chapter . . . , it shall suitably inscribe and execute its written approval on the face of the plat." RCW 58.17.170. Once the local legislative body approves a final plat, the landowner may apply for a building permit.

¶14 This case involves a local legislative body's approval of a preliminary plat. Any decision to approve a proposed plat under chapter 58.17 RCW is reviewable under LUPA, chapter 36.70C RCW. RCW 58.17.180. The legislature's enactment of LUPA in 1995 replaced the writ of certiorari as the means of appealing a local land use

---

[6] " 'Preliminary plat' is a neat and approximate drawing of a proposed subdivision showing the general layout of streets and alleys, lots, blocks, and other elements of a subdivision consistent with the requirements of this chapter. The preliminary plat shall be the basis for the approval or disapproval of the general layout of a subdivision." RCW 58.17.020(4).

[7] " 'Final plat' is the final drawing of the subdivision and dedication prepared for filing for record with the county auditor and containing all elements and requirements set forth in this chapter and in local regulations adopted under this chapter." RCW 58.17.020(5).

decision. RCW 36.70C.030; *Chelan County v. Nykreim*, 146 Wn.2d 904, 916-17, 52 P.3d 1 (2002). LUPA provides "the exclusive means of judicial review of land use decisions," with certain limited exceptions. RCW 36.70C.030(1). LUPA's purpose "is to reform the process for judicial review of land use decisions made by local jurisdictions, by establishing uniform, expedited appeal procedures and uniform criteria for reviewing such decisions, in order to provide consistent, predictable, and timely judicial review." RCW 36.70C.010. A person who is "aggrieved or adversely affected by the land use decision" may bring a LUPA petition. RCW 36.70C.060(2).

¶15 Relevant to this case, LUPA authorizes a superior court to reverse a local land use decision if the party seeking relief shows:

> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court; [or]

> (d) The land use decision is a clearly erroneous application of the law to the facts.

RCW 36.70C.130. In this case, the superior court found that the local land use decision contained an erroneous interpretation of law. This court reviews de novo any error claimed under RCW 36.70C.130(1)(b). *Pinecrest Homeowners Ass'n v. Glen A. Cloninger & Assocs.*, 151 Wn.2d 279, 290, 87 P.3d 1176 (2004). This court also reviews de novo issues of statutory interpretation and jurisdiction. *Crosby v. Spokane County*, 137 Wn.2d 296, 301, 971 P.2d 32 (1999). Standing is jurisdictional. *Nykreim*, 146 Wn.2d at 926.

*The requirement of RCW 36.70C.070(7) to set forth a separate statement of each alleged error is not jurisdictional*

¶16 As a preliminary matter, the respondents argue that the doctrine of substantial compliance does not apply

to LUPA's requirements, including the requirement in RCW 36.70C.070(7) that a land use petitioner must set forth "[a] separate and concise statement of each error alleged to have been committed" and that Knight's failure to assign error to the City Council's decision that she lacked standing divested the superior court of jurisdiction.

¶17 A superior court hearing a LUPA petition acts in an appellate capacity and with only the jurisdiction conferred by law. *Conom v. Snohomish County*, 155 Wn.2d 154, 157, 118 P.3d 344 (2005). "[B]efore a superior court may exercise its appellate jurisdiction, statutory procedural requirements must be satisfied. A court lacking jurisdiction must enter an order of dismissal." *Id.* (citing *Crosby*, 137 Wn.2d at 300-01).

¶18 "[I]t is well established that statutory procedural requirements must be met in order for a superior court to exercise its appellate jurisdiction," but "cases standing for this proposition have involved statutory procedural requirements for filing and service of the appeal." *Id.* at 161; *see also Nykreim*, 146 Wn.2d at 926 ("Compliance with such time limit is essential for the court to acquire 'jurisdiction.' "). The Court of Appeals decision cited by the respondents, *Overhulse Neighborhood Ass'n v. Thurston County*, 94 Wn. App. 593, 599, 972 P.2d 470 (1999), and other cases that have held that the rule of substantial compliance is inapplicable to LUPA's procedural requirements have addressed a party's failure to comply with the timing and service requirements established in RCW 36.70C.040. That section provides, "A land use petition is *barred*, and the court *may not grant review*, unless the petition is timely filed with the court and timely served." RCW 36.70C.040(2) (emphasis added). A petition is timely if filed and served within 21 days of the land use decision. RCW 36.70C.040(3). RCW 36.70C.040(2)'s bar against petitions that are untimely or

improperly served[8] directly furthers LUPA's purpose to establish " 'expedited appeal procedures' " and " 'timely judicial review.' " *Conom*, 155 Wn.2d at 162 (quoting RCW 36.70C.010). Requiring strict compliance with the statutory bar against untimely petitions promotes the finality of local land use decisions. *Nykreim*, 146 Wn.2d at 933.

¶19 In contrast, RCW 36.70C.070's form and content requirements do not directly further LUPA's purpose to establish "expedited appeal procedures" and provide "timely judicial review." RCW 36.70C.010. Where a procedural requirement does not directly relate to the statute's express purpose, we have allowed substantial compliance. In *Conom*, we held that a party's failure to note the initial hearing on preliminary matters within seven days, as required by RCW 36.70C.080(1), did not divest the superior court of jurisdiction. 155 Wn.2d at 163. Contrasting RCW 36.70C.080(1) with RCW 36.70C.040, we concluded, "While strict adherence to statutory time limits is necessary . . . in order to preserve the finality of administrative decisions, we do not find it necessary to extend this strict adherence requirement to RCW 36.70C.080(1) in order to further the purpose of LUPA." *Id.* at 162. The responding party in *Conom* was not prejudiced by the Conoms' failure to note the initial hearing because RCW 36.70C.080(1) already provided the county at least 35 days from the date of service to prepare. *Id.* at 163.

---

[8] Even under RCW 36.70C.040, substantial compliance is acceptable in some instances. Where service is otherwise proper under the civil rules, a party's failure to include the name of a necessary party in the caption does not divest the superior court of jurisdiction absent a demonstration of prejudice. *Quality Rock Prods., Inc. v. Thurston County*, 126 Wn. App. 250, 265-66, 108 P.3d 805 (2005). In *Quality Rock*, other than omitting the necessary party in the petition's caption, the party strictly complied with the procedural requirements necessary to invoke the superior court's appellate jurisdiction. *Id.* at 271-72. The petitioner clearly identified the necessary party in the body of the petition. *Id.* at 272. *Cf. Suquamish Indian Tribe v. Kitsap County*, 92 Wn. App. 816, 825-26, 965 P.2d 636 (1998) (holding that a failure to name a necessary party in a LUPA petition requires dismissal of the petition).

¶20 In the only case addressing the question of whether RCW 36.70C.070 is jurisdictional, the Court of Appeals held that failure to comply with RCW 36.70C.070(4) did not divest the superior court of jurisdiction. *Keep Watson Cutoff Rural v. Kittitas County*, 145 Wn. App. 31, 184 P.3d 1278 (2008). In *Watson Cutoff*, the petitioner failed to attach copies of the local land use decision to the petition as required by RCW 36.70C.070(4). The court noted that, unlike RCW 36.70C.040, RCW 36.70C.070 does not state that a petition is barred if a party fails to satisfy the section's requirements. The court held that while timing and service requirements are jurisdictional, RCW 36.70C-.070's content and form requirements "are not jurisdictional requirements that divest a superior court of jurisdiction if not met." *Id.* at 39. We agree.

¶21 "Washington courts do not enter an order of dismissal lightly. A trial court resorts to dismissal when a party shows it is substantially prejudiced by another party's actions." *Conom*, 155 Wn.2d at 163. In this case, Tahoma Terra and the City were not substantially prejudiced by Knight's failure to assign error to the City Council's decision that she lacked standing under the YMC. As the Court of Appeals recognized, "The City construes both the YMC and LUPA as requiring the same thing" in terms of standing to appeal a land use decision. *Knight*, 2010 WL 1454096, at *5, 2010 Wash. App. LEXIS 750, at *18-19. And Knight's petition contained a section alleging facts to support her standing under LUPA. These facts, if sufficient to establish standing under LUPA, would also be sufficient to establish standing under the YMC. The substance of Knight's LUPA petition gave Tahoma Terra and the City notice that she was attacking the City Council's finding that she lacked standing. Tahoma Terra and the City were not substantially prejudiced, and the superior court properly denied the motions to dismiss.

*Knight has standing under RCW 36.70C.060*

¶22 The relevant decision under review in a LUPA case is the final land use decision by the local government. RCW 36.70C.020(2) (defining "land use decision" as "a final determination by a local jurisdiction's body . . . with the highest level of authority to make the determination, including those with authority to hear appeals"). In this case, the relevant decision under review is the City Council's decision affirming the hearing examiner's approval of the Tahoma Terra preliminary plat. City of Yelm Resolution 481 "affirmed and amended" the hearing examiner's decision and states that "[t]he exact quantity of water rights that the City currently holds . . . is immaterial because the City presented evidence . . . that substantial additional water rights have been obtained by the City and that their transfer is reasonably expected to be approved [by] the State Department of Ecology." CP at 25, 28. The City Council stated that the hearing examiner had concluded such evidence "satisfied" the requirements of RCW 58.17.110. *Id.* at 28. Finally, the City Council stated, "The City has made appropriate findings of water availability at the appropriate points in the application process." *Id.* Unlike the hearing examiner's conditional approval, the City Council's resolution does not explicitly condition preliminary plat approval on a showing of adequate provision of water at the final plat approval stage. Instead, Resolution 481 indicates that the City, by fully satisfying the requirements of RCW 58.17.110, has no further burden to make a showing at the final plat approval stage of an adequate water supply.

¶23 LUPA limits standing to challenge land use decisions to applicants and land owners of property to which the land use decision is directed or "[a]nother person

aggrieved or adversely affected by the land use decision."[9] RCW 36.70C.060(1)-(2). Under LUPA, "[a] person is aggrieved or adversely affected . . . only when all of the following conditions are present":

(a) The land use decision has prejudiced or is likely to prejudice that person;

(b) That person's asserted interests are among those that the local jurisdiction was required to consider when it made the land use decision;

(c) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the land use decision; and

(d) The petitioner has exhausted his or her administrative remedies to the extent required by law.

RCW 36.70C.060(2).

¶24 To satisfy LUPA's prejudice requirement, a petitioner must show that he or she would suffer an "injury-in-fact" as a result of the land use decision. *Nykreim*, 146 Wn.2d at 934. "To show an injury in fact, the plaintiff must allege specific and perceptible harm. If the plaintiff alleges a threatened rather than an existing injury, he or she 'must also show that the injury will be immediate, concrete and specific; a conjectural or hypothetical injury will not confer standing.' " *Suquamish Indian Tribe v. Kitsap County*, 92 Wn. App. 816, 829, 965 P.2d 636 (1998) (footnote omitted) (internal quotation marks omitted) (quoting *Harris v. Pierce County*, 84 Wn. App. 222, 231, 928 P.2d 1111 (1996)). " '[A] party need not show a particular level of injury in order to establish standing' " under LUPA. *Nykreim*, 146 Wn.2d at 935 (alteration in original) (quoting *Suquamish*, 92 Wn. App. at 832).

¶25 " 'In general, parties owning property adjacent to a proposed project and who allege that the project will

---

[9] Similarly, any "aggrieved person" may appeal a hearing examiner's decision to the City Council. YMC 2.26.150.

injure their property have standing' " under LUPA. *Id.* at 934-35 (quoting *Suquamish,* 92 Wn. App. at 829-30). In *Suquamish,* members of the petitioning organization alleged that a proposed land use project would affect them by resulting in increased traffic. 92 Wn. App. at 831. One member lived 150 feet from the proposed project; another member lived on property that would be surrounded on three sides by the project. *Id.* Evidence that the members would be affected by the large, predicted increase in traffic was "sufficient to establish injury-in-fact." *Id.*; *see also Anderson v. Pierce County,* 86 Wn. App. 290, 300, 936 P.2d 432 (1997) (finding sufficient allegations to support injury in fact where a coalition member testified he owned 60 acres adjacent to the proposed project and his property would be damaged by storm water runoff from the project site).

¶26 In contrast, the interveners in *Nykreim* lacked standing because their " 'sole interest' " in the matter was " 'to preserve the protections of the zoning in the district.' " 146 Wn.2d at 935 (quoting interveners reply). The interveners could not show prejudice under RCW 36.70C.060(2) where their interest in the case was merely " 'the abstract interest of the general public in having others comply with the law.' " *Id.* "Without alleging more specific injuries adversely affecting them or their property," the interveners could not satisfy LUPA's prejudice requirement. *Id.*

¶27 Knight has shown sufficient prejudice to satisfy RCW 36.70C.060(2). Her interest is not abstract. Knight owns land 1,300 feet away from the proposed subdivisions, and she has senior water rights within the same aquifer as Tahoma Terra's proposed sources of water for the new development. She presented allegations that the City is overdrawing its water rights and that it has insufficient water supplies to serve the proposed developments, allegations bolstered by the DOE in an amicus brief filed in support of Knight's LUPA petition in the superior court. In particular, Knight presented evidence that the City has had

a water deficit every year since 2001 and will have a deficit at least through 2012 (the last year for which Knight's expert calculated the City's supply and demand), even after accounting for a recent transfer of water rights from the Tahoma Valley Golf Course and assuming the DOE approves a future rights transfer from a nearby farm.[10] Knight also presented a hydrogeologist's report detailing the adverse impact the subdivisions' water demand would have on her water rights. Specifically, any additional groundwater withdrawals by the City at its existing wells would reduce the flow in Thompson Creek, adversely affecting Knight's ability to withdraw water from the creek under her permit. Additionally, reduced flow in Thompson Creek would reduce "leakage" flow that resupplies the shallow aquifer from which Knight draws groundwater pursuant to her senior water rights.[11] CP at 593-94.

¶28 The importance of preliminary plat approval within the scheme of planning and approving new development demonstrates that the injury Knight alleges is immediate and specific. "A preliminary plat application is meant to give local governments and the public an approximate picture of how the final subdivision will look. It is to be expected that modifications will be made during the give and take of the approval process." *Friends of the Law v. King County*, 123 Wn.2d 518, 528, 869 P.2d 1056 (1994) (citation omitted). The applicant must make a threshold

[10] The City's attorney argued against Knight's calculation of water rights supply and demand, and stated, "Subdivision approval is not the appropriate place or process to attempt to determine the **property interests** of the City in water rights." CP at 708. Based on the City's water system planning process, the City's attorney concluded that the City had reasonably concluded that water rights would be available to serve the proposed developments, including Tahoma Terra.

[11] The dissent labels Knight's injury as "conjectural or hypothetical, rather than immediate, concrete, and specific," claiming that the City has obtained water rights from the golf club, the Dragt farm, and the McMonigle Farm. Dissent at 350. But the City's own decision rejecting Knight's arguments explains that although the City has acquired the water rights, transfer of the rights has not yet been approved by DOE and the City continues to pursue additional sources of water for future development. CP at 28 (Resolution 481, Conclusion of Law 15). It is more reasonable to label the City's plans, not Knight's interest, as "conjectural or hypothetical, rather than immediate, concrete, and specific."

showing that the completed development is able to comply with applicable zoning ordinances and health regulations. *See id.; Topping v. Pierce County Bd. of Comm'rs*, 29 Wn. App. 781, 783, 630 P.2d 1385 (1981).

¶29 While the process anticipates negotiations and modifications, the preliminary plat process "is not merely an insignificant stage of the proceedings without real consequence." *Loveless v. Yantis*, 82 Wn.2d 754, 759, 513 P.2d 1023 (1973). Any modifications included in a conditional approval of the preliminary plat are binding on the party seeking approval and the local decision-making body granting conditional approval. *Id.* at 761. A local decision-making body cannot conditionally approve a preliminary plat and then disapprove a final plat application for a project that conforms to the conditions of the preliminary approval. *Id.* The failure to challenge environmental issues at the preliminary plat stage could result in decisions by the local land use authority that have a "binding impact" on interested parties without their consent or participation. *Id.* at 759.

¶30 In this case, while the hearing examiner conditioned approval of Tahoma Terra's preliminary plat on a showing of adequate provision of water at the final plat approval stage, the City Council's Resolution 481 did not contain such an explicit statement. Instead, Resolution 481 indicates that the City complied with RCW 58.17.110, removing any burden on the City to make a showing of adequate water supply at the final plat approval stage. If the decision by the City Council, the body with the sole authority to approve Tahoma Terra's final plat approval application under RCW 58.17.100, forecloses further review of the City's evidence of adequate water supply, then it has denied Knight any opportunity to challenge the evidence and the potential threat to her water rights.[12] At a minimum, Resolution 481 is ambiguous as to whether the City and Tahoma Terra must

---

[12] The City and Tahoma Terra argue that Knight's alleged injury is too conjectural to satisfy LUPA's prejudice requirement because Knight's senior water rights

make a further showing to secure final plat approval. Knight was entitled to clarification of the City Council's decision and an opportunity to challenge the City's evidence of water provisions before final plat approval, and that is exactly what the superior court provided when it stated that all requirements must be satisfied and confirmed in writing before final plat approval, when it provided Knight notice of any final plat approval proceedings, and when it remanded to the City Council for modification.[13]

¶31 Knight also satisfied RCW 36.70C.060(2)(b) because her interests were among those that the City Council was required to consider when it granted preliminary plat approval to Tahoma Terra. RCW 58.17.110(1) requires a local governmental body to "inquire into the public use and interest proposed to be served" by a new development and to determine "[i]f appropriate provisions are made for . . . the public health, safety, and general welfare [and] potable water supplies . . . ." Determining whether there are adequate water sources to serve the Tahoma Terra development is certainly within the public interest the City Council must consider before approving the plat application.

---

would be harmed only if three hypothetical conditions occur. Under this argument, Knight would be prejudiced only if (1) the City has insufficient water supplies to support the new development, (2) the City grants final plat approval anyway, and (3) DOE fails to initiate an enforcement action against the City and Tahoma Terra for violating Knight's senior water rights. However, Knight presented evidence that the City has insufficient water supplies to serve future development, and the City Council's decision forecloses further review of the City's showing of water provisions, allowing the City to grant final plat approval on the basis of the evidence currently in the record—evidence that the superior court stated would be insufficient to support final plat approval. Knight's alleged injury is not too conjectural to support her claim of prejudice under LUPA.

[13] The superior court's judgment in favor of Knight substantially redressed the prejudice caused by the City Council's decision to approve the preliminary plat, demonstrating Knight's satisfaction of RCW 36.70C.060(2)(c). The superior court's order granting Knight notice of future final plat applications was authorized by RCW 36.70C.140, which provides, "If the decision is remanded for modification . . . , the court may make such an order as it finds necessary to preserve the interests of the parties and the public, pending further proceedings or action by the local jurisdiction." Under the superior court's order, Knight will have an opportunity to challenge the City's showing of adequate water provisions.

¶32 Finally, Knight exhausted her administrative remedies, as required by RCW 36.70C.060(2)(d), by appealing the preliminary plat approval to the highest local decision-making body with authority to approve the plat application. Knight had standing to bring the LUPA action in superior court.

*Tahoma Terra and the City are not entitled to attorney fees under RCW 4.84.370*

¶33 Knight also appeals the Court of Appeals award of attorney fees to Tahoma Terra and the City under RCW 4.84.370. RCW 4.84.370 provides,

> (1) . . . [R]easonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal before the court of appeals or the supreme court of a decision by a county, city, or town to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision. The court shall award and determine the amount of reasonable attorneys' fees and costs under this section if:
>
> (a) The prevailing party on appeal was the prevailing party or substantially prevailing party before the county, city, or town, . . . ; and
>
> (b) The prevailing party on appeal was the prevailing party or substantially prevailing party in all prior judicial proceedings.
>
> (2) In addition to the prevailing party under subsection (1) of this section, the county, city, or town whose decision is on appeal is considered a prevailing party if its decision is upheld at superior court and on appeal.

At issue is whether Tahoma Terra substantially prevailed "in all prior judicial proceedings" to satisfy subsection (1)(b) and whether the City's decision was "upheld at superior court" to satisfy subsection (2). Although the superior court

remanded to the City Council for modification of the "and/or" condition, the Court of Appeals concluded that the City and Tahoma Terra substantially prevailed in the superior court because the court did not reverse the preliminary plat approval. *Knight*, 2010 WL 1454096, at *7, 2010 Wash. App. LEXIS 750, at *23-24.

¶34 A prevailing party need not prevail on its entire claim, but it must substantially prevail to collect fees. *Benchmark Land Co. v. City of Battle Ground*, 94 Wn. App. 537, 551, 972 P.2d 944 (1999), *aff'd on other grounds*, 146 Wn.2d 685, 49 P.3d 860 (2004). "The determination as to who substantially prevails turns on the substance of the relief which is accorded the parties." *Marine Enters., Inc. v. Sec. Pac. Trading Corp.*, 50 Wn. App. 768, 772, 750 P.2d 1290 (1988). Additionally, a party in a land use case substantially prevails if it improves its position from one level of review to the next. *See Benchmark*, 94 Wn. App. at 551; *Gig Harbor Marina, Inc. v. City of Gig Harbor*, 94 Wn. App. 789, 798-99, 973 P.2d 1081 (1999).

¶35 In *Benchmark*, the developer received preliminary plat approval from the city planning commission, subject to 10 conditions. 94 Wn. App. at 541. The city council affirmed the conditional approval and added a condition that required the developer to make street improvements. *Id.* at 541-42. The developer filed a LUPA action, and the superior court held that the city had failed to demonstrate a nexus between the development's impacts and the need for street improvements. *Id.* at 542-43. The city appealed, and the Court of Appeals affirmed. *Id.* at 549. The developer requested attorney fees under RCW 4.84.370. The developer claimed it substantially prevailed before the city because it obtained preliminary plat approval. *Id.* at 551. The court held otherwise:

> Here, although [the developer] received plat approval before the city council, the approval came with a major condition— paying for half-street improvements. And [the developer] did not improve its position from the planning commission level to

the city council level. Under these circumstances, we decline to hold that [the developer] was the prevailing party before the city council.

*Id.* The court declined to award fees to the developer under RCW 4.84.370.

¶36 Similarly, while the superior court upheld Tahoma Terra's preliminary plat approval, the court's order remanding the case to the City Council was decidedly not in Tahoma Terra's favor. Knight persuaded the court to adopt findings of fact and conclusions of law that became the basis for the City and Tahoma Terra's appeal. The court found the record in the case to support Knight's statement of the facts—that the City had insufficient water to meet demand and could not support new development. The court did not grant the City and Tahoma Terra's request to dismiss Knight's LUPA petition for lack of standing. Instead, the court remanded for revision of the disputed condition and granted Knight the right to notice of final plat approval applications. Knight was the only party to improve her position in the superior court. Moreover, because the superior court did not uphold the City Council's decision—affirming the preliminary plat approval *and* finding Knight lacked standing—the City is not eligible for fees under RCW 4.84.370(2). Tahoma Terra and the City were not prevailing parties in the superior court.

¶37 Additionally, Tahoma Terra and the City are not eligible for a fee award under RCW 4.84.370 because they are not the prevailing parties in this court. RCW 4.84.370(1) provides a reasonable fee and cost award "to the prevailing party or substantially prevailing party on appeal before the court of appeals or the supreme court." Because Tahoma Terra and the City are not prevailing parties before this court (the court making the final determination of the case), they are not entitled to an award of fees and costs.

¶38 Finally, the purpose of RCW 4.84.370 is to discourage meritless appeals. *Gig Harbor Marina*, 94 Wn. App. at 800. In this case, Knight did not appeal the decision

of the superior court. A party such as Knight who does not choose to advance the litigation should not be at risk of paying another party's attorney fees.

## CONCLUSION

¶39 Knight had standing under LUPA to challenge the preliminary plat approval. We reverse the Court of Appeals and reinstate the superior court decision. No party is awarded fees under RCW 4.84.370.

MADSEN, C.J., and C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, and STEPHENS, JJ., concur.

¶40 J.M. JOHNSON, J. (dissenting) — JZ Knight does not have standing in this case under the Yelm Municipal Code (YMC) or the land use petition act (LUPA), chapter 36.70C RCW. All holders of water rights within the same water basin do not automatically have standing to oppose proposed economic development in their area. Here, it is proposed that Knight be allowed to bring suit to block remote residential development with no impact on her water rights. The hearing examiner found that the city of Yelm (City) had obtained sufficient water rights from the Nisqually Golf and Country Club, the Dragt farm, and the McMonigle farm. Furthermore, the City is pursuing additional water rights for the Tahoma Terra (TTPH 3-8 LLC) project and has a reasonable expectation of acquiring these rights before final plat approval. I would affirm the decision of the Court of Appeals dismissing Knight's LUPA petition for lack of standing and would award attorney fees. Thus, I respectfully dissent.

## A. Standing

¶41 YMC 2.26.150 and LUPA, RCW 36.70C.060(2), define standing similarly and require either a "person aggrieved" or a person "aggrieved or adversely affected."

Under LUPA, this requires a showing of injury-in-fact resulting from a land-use decision. *Chelan County v. Nykreim*, 146 Wn.2d 904, 934, 52 P.3d 1 (2002). In other words, the standing requirement will be met through a demonstration by the plaintiff that he or she "personally 'will be specifically and perceptibly harmed by the proposed action.' " *Thornton Creek Legal Def. Fund v. City of Seattle*, 113 Wn. App. 34, 47-48, 52 P.3d 522 (2002) (internal quotation marks omitted) (quoting *Trepanier v. City of Everett*, 64 Wn. App. 380, 382, 824 P.2d 524 (1992)). "Further, when a person alleges a threatened injury, as opposed to an existing injury, he or she must show an immediate, concrete, and specific injury to him or herself." *Trepanier*, 64 Wn. App. at 383. "If the injury is merely conjectural or hypothetical, there can be no standing." *Id.*

¶42 Here, the hearing examiner merely provided preliminary plat approval for the Tahoma Terra development. The examiner granted this approval on the condition that the City "must provide a potable water supply adequate to serve the development at final plat approval and/or prior to the issuance of any building permit." Clerk's Papers (CP) at 1562. Knight has based standing on a speculative possibility that there may be an infringement of her senior water rights at some point in the future. This mere possibility is not only unlikely but also insufficient to confer standing because the hearing examiner found that the City had obtained water rights from the Nisqually Golf and Country Club, the Dragt farm, and the McMonigle farm. Furthermore, the City is pursuing additional water rights for the Tahoma Terra project and will acquire these rights before final plat approval. As a result, Knight can show only that her injury is conjectural or hypothetical, rather than immediate, concrete, and specific.

¶43 The majority argues that adjacent property owners generally have standing under LUPA and compares the current case to a Court of Appeals decision in *Suquamish Indian Tribe v. Kitsap County*, 92 Wn. App. 816, 965 P.2d

636 (1998). There, evidence indicated that adjacent landowners would be affected by a large, predicted increase in traffic. *Id.* at 831. Here, however, the City has made a good faith showing of acquiring the necessary water rights, and the findings of the hearing examiner confirm that Knight's senior water rights will remain unaffected by the Tahoma Terra development. In making this comparison with *Suquamish*, the majority relies on a particular reading of the Yelm City Council's Resolution 481. Majority at 344. According to the majority, the amended findings of fact on the part of the city council essentially removed the condition of the hearing examiner requiring actual proof of an adequate potable water supply at the final plat approval stage. *Id.*

¶44 By indicating that the City complied with RCW 58.17.110, however, the city council was merely stating that "[t]he exact quantity of water rights that the City currently holds . . . is immaterial because the City presented evidence, upon which the Hearing Examiner reasonably relied . . . ." CP at 28. The city council was affirming the decision and condition of the hearing examiner. Actual possession of sufficient water rights was not required at the preliminary plat approval stage. The Court of Appeals decision dismissing the case for lack of standing should be affirmed.

### B. Attorney Fees

¶45 The majority also believes that Tahoma Terra and the City are not substantially prevailing parties at the superior court stage of litigation because their legal position was not improved from one level of review to the next. Majority at 346-47. This legal interpretation of substantially prevailing parties, however, is based from a Court of Appeals decision in *Benchmark Land Co. v. City of Battle Ground*, 94 Wn. App. 537, 551, 972 P.2d 944 (1999), *aff'd on other grounds*, 146 Wn.2d 685, 49 P.3d 860 (2002). We are not bound by the outcome or reasoning in *Benchmark*, and

a sensible reading of RCW 4.84.370 would allow an award of attorney fees when the superior court merely remands to the city council for purposes of making a slight modification to an "and/or" condition.

¶46 Instead, the determination of substantially prevailing parties should focus on which party prevails on the major issues of the case. As noted by the Court of Appeals in this case, "Although the trial court remanded for modification of the examiner's condition, it ultimately upheld the City's decisions to grant the preliminary subdivision approvals." *Knight v. City of Yelm*, noted at 155 Wn. App. 1027, 2010 WL 1454096, at *7, 2010 Wash. App. LEXIS 750, at *24. Thus, an award of attorney fees on behalf of Tahoma Terra and the City would be appropriate, and we should affirm the Court of Appeals on this issue.

CONCLUSION

¶47 I would uphold the Court of Appeals in dismissing Knight's LUPA petition for lack of standing and award attorney fees to Tahoma Terra and the City. Knight has hypothesized a conjectural or hypothetical infringement to her senior water rights. She has not demonstrated an interest that is sufficiently particularized to differentiate her from all resident water users in the same water basin. Yelm City Council's Resolution 481 did not preclude later review of the City's evidence of an adequate water supply at final plat or permit stages.[14] Thus, I respectfully dissent.

ALEXANDER, J., concurs with J.M. JOHNSON, J.

---

[14] The superior court's remand for minor modification of the "and/or" condition does not negate the award of attorney fees to a substantially prevailing party under this analysis.