[Nos. 40540-3-I; 40545-4-I. Division One . October 19, 1998.]

SUQUAMISH INDIAN TRIBE, *Appellant,* v. KITSAP COUNTY, ET AL., *Respondents*.

THE NORTH KITSAP COORDINATING COUNCIL, ET AL., *Appellants*, v. KITSAP COUNTY, ET AL., *Respondents*, SUQUAMISH INDIAN TRIBE, *Appellant*.

---

[29]*See State v. Olson*, 126 Wn.2d 315, 321, 893 P.2d 629 (1995).

*John C. Sledd*, for appellant Suquamish Indian Tribe.

*David A. Bricklin* of *Bricklin & Gendler*, for appellants North Kitsap Coordinating Council, Jim Halstead, Zane Thomas, and Charlie Burrow.

*Russell D. Hauge, Prosecuting Attorney*, and *Evelyn S.A. Tanner, Deputy*, for respondent Kitsap County.

*John C. McCullough, Jr.*, of *Phillips McCullough Wilson Hill & Fikso, P.S.*, for respondents Robert and Janet Screen.

BAKER, J. — The North Kitsap Coordinating Council (NKCC), a citizens' group, some individual members of the group, and the Suquamish Indian Tribe commenced this action by filing land use petitions challenging Kitsap County's approval of a proposal to develop an area near the Tribe's reservation. The trial court granted summary judgment in favor of the county and the developers based on a determination that the petitioning parties lacked standing. On appeal, the petitioners argue that the trial court erred by concluding that they did not have standing under the Land Use Petition Act (LUPA) to challenge the County's decision. The Tribe also challenges the trial court's conclusion that its petition is barred because it failed to name the NKCC as a party before LUPA's 21 day filing period expired.

We affirm the dismissal of the Tribe's petition because it failed to name the NKCC, a required party, within the filing period. We conclude that the Tribe's amended petition naming the NKCC as a party did not relate back to its original petition under CR 15(c). However, we conclude that NKCC and its members established the existence of a genuine dispute of material fact regarding their standing to petition under LUPA. We therefore remand the NKCC petition for further proceedings. The Tribe was named as a party in NKCC's petition, so it may continue to participate in the proceedings on remand.

## FACTS

The Kitsap County Board of Commissioners approved Janet and Bob Screens' Planned Unit Development (the Project) for 450 acres of land in Kitsap County. The Screens proposed to construct residential lots and a golf course. The Board approved the Project over objections made by the Tribe and the NKCC.

On December 20, 1996, the Tribe filed a Land Use Petition against Kitsap County and the Screens, challenging the County's approval of the Project. On December 30

NKCC and some of its individual members also filed a Land Use Petition challenging the County's approval of the Project. On January 10, 1997, the Tribe filed an amended petition, listing as additional parties the NKCC and its individual members.

The two cases were consolidated, and the Screens then moved for summary judgment. In their motion, they challenged the standing of each petitioner. They also argued that the Tribe failed to name as parties the NKCC and its members as required by the Land Use Petition Act and that its amended petition was too late to cure the defect.

The trial court granted summary judgment for the Screens and the County. It concluded that the Tribe did not cure the omission of the required parties from its petition by filing the amended petition. It also concluded that none of the petitioners had standing because they did not present evidence creating an issue of fact as to whether they will suffer "immediate, concrete, and specific injury" from the project.

## Relation Back Under CR 15(c)

Below, the Screens argued that the Tribe's petition should be dismissed because the Tribe did not name and serve the NKCC as a party as required by LUPA. The Tribe contends that its amended petition related back to the original petition under CR 15(c).

LUPA[1] provides the exclusive means of obtaining judicial review of most land use decisions made by local jurisdictions.[2] A party may commence proceedings under LUPA by filing a land use petition in superior court.[3] The petition must be served on specific persons "who shall be

[1]RCW 36.70C.

[2]RCW 36.70C.030(1), RCW 36.70C.010.

[3]RCW 36.70C.040(1).

parties to the review of the land use petition."[4] The statute specifies that the petition must be served on

> [e]ach person named in the written decision who filed an appeal to a local jurisdiction quasi-judicial decision maker regarding the land use decision at issue, unless the person has abandoned the appeal or the person's claims were dismissed before the quasi-judicial decision was rendered.[5]

■ ■ Because the NKCC was a participating party in the proceedings before the hearing examiner and the Board of County Commissioners, the Tribe was required to name NKCC and serve it with its petition. The Tribe faxed and mailed copies of the original petition to the NKCC members, but concedes that it did not serve them with the petition or name them as parties. The Tribe argues that its amended petition, which names the NKCC and its members as parties, relates back under CR 15(c). That rule provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

The question of whether the Tribe cured its original petition under this rule is a question of law that this court reviews de novo.[6]

We must first address whether CR 15(c) applies in LUPA

---

[4]RCW 36.70C.040(2).

[5]RCW 36.70C.040(2)(d).

[6]*See In re Electric Lightwave, Inc.*, 123 Wn.2d 530, 536, 869 P.2d 1045 (1994).

cases involving the addition of a party after the period for filing a petition. Under RCW 36.70C.030(2), the civil rules "govern procedural matters under [LUPA] to the extent that the rules are consistent with this chapter."

■ The Screens contend that CR 15(c) is not consistent with LUPA because it circumvents LUPA's requirement that the petitioner serve all parties within 21 days of the issuance of the land use decision being challenged.[7] They also contend in a footnote that RCW 36.70C.040's requirements are substantive rather than procedural. But they cite no authority for the latter argument. We therefore will not consider it.[8]

■ We conclude that CR 15(c) is not inconsistent with LUPA. In *City of Federal Way v. King County*, involving a challenge to a land use decision, the court applied CR 15(c).[9] It did so even while stating that "[t]he consistent policy in this state is to review decisions affecting use of land expeditiously so that legal uncertainties can be promptly resolved and land development not unnecessarily slowed or defeated by litigation-based delays."[10] LUPA expressly embraces the same policy.[11] In addition, our Supreme Court has held that relation back under CR 15(c) does not subvert the policies behind statutes of limitations once the notice and prejudice requirements have been met.[12] There is no inconsistency between LUPA's timely filing and service requirements and CR 15(c).

---

[7]RCW 36.70C.040(3).

[8]*See Electric Lightwave*, 123 Wn.2d at 545.

[9]*City of Federal Way v. King County*, 62 Wn. App. 530, 540, 815 P.2d 790 (1991).

[10]*Id.* at 538.

[11]*See* RCW 36.70C.010. The purpose of LUPA is to "reform the process for judicial review of land use decisions made by local jurisdictions, by establishing uniform, expedited appeal procedures and uniform criteria for reviewing such decisions, in order to provide consistent, predictable, and timely judicial review."

[12]*Haberman v. Washington Pub. Power Supply Sys.*, 109 Wn.2d 107, 172-73, 744 P.2d 1032 (1987); *North St. Ass'n v. City of Olympia*, 96 Wn.2d 359, 368, 635 P.2d 721 (1981), *overruled on other grounds by Sidis v. Brodie/Dohrmann, Inc.*, 117 Wn.2d 325, 815 P.2d 781 (1991).

■ The Screens next argue that even assuming that CR 15(c) applies in this context, the doctrine of inexcusable neglect applies. Where a plaintiff or petitioner was aware of the necessary parties at all times, failed to name them, and points to no reason for the omission, the omission is inexcusable neglect.[13] Where such neglect exists, CR 15(c) is not applicable, regardless of whether the nonmoving party is able to show prejudice.[14]

The Tribe contends that the doctrine of inexcusable neglect applies to the question of whether a court should permit amendment, not the question of whether an amendment made as a matter of right relates back. We disagree. First, the courts of this state have consistently applied the doctrine of inexcusable neglect to the question of relation back under CR 15(c).[15] In addition, contrary to the Tribe's assertion, there appears to be no consensus in the federal courts on the issue of whether the doctrine of inexcusable neglect applies to relation back under the rule.[16]

The Tribe relies on *Culpepper v. Snohomish County Department of Planning and Community Development*,[17] but we decline to extend the holding of *Culpepper* to the facts in this case.

In *Culpepper* we held that a plaintiff's amended complaint could relate back under CR 15(c) where he mistakenly failed to name Snohomish County, a necessary party. Instead, he named the Snohomish County Community Development Division (CDD). We reasoned that prior cases finding inexcusable neglect were distinguishable for a

---

[13]*North St. Ass'n*, 96 Wn.2d at 368-69.

[14]*Haberman*, 109 Wn.2d at 173-74.

[15]*See South Hollywood Hills Citizens Ass'n v. King County*, 101 Wn.2d 68, 77-78, 677 P.2d 114 (1984); *North St. Ass'n.*, 96 Wn.2d at 368.

[16]*In re Convertible Rowing Exerciser Patent Litig.*, 817 F. Supp. 434, 437 n.8 (D. Del. 1993); *Upshaw v. Equitable Life Assurance Soc'y*, 85 F.R.D. 674, 678, (E.D. Ark. 1980). *See also* 3 James Wm. Moore, Moore's Federal Practice § 15.15 [4.-2] (1985).

[17]59 Wn. App. 166, 796 P.2d 1285 (1990), *review denied*, 116 Wn.2d 1008 (1991).

number of reasons. First, the prior cases involved failures to name "a private citizen who had obtained a favorable decision from an administrative agency and who was at risk of losing that important right if an agency decision was reversed."[18] In addition, the county was fully involved in the case as a party from its commencement.[19] Finally, we concluded that there was excusable neglect. The relevant statutes did not indicate the necessary parties.[20] The hearing examiner's instructions regarding appeal did not state that the County had to be named as a party, and the CDD was named as a party in the examiner's decision.[21]

The analysis in *Culpepper* does not help the Tribe. It is true that the NKCC is not the party at risk of losing an important right if the County's decision is reversed. In addition, the NKCC has been involved in the proceedings from the beginning and filed its own land use petition with the superior court. However, important factors distinguish this case from *Culpepper*. In contrast to the statute and hearing examiner's instructions at issue in *Culpepper*, LUPA gives clear instruction as to the identity of necessary parties. In addition, in *Culpepper* the County initiated the action through the CDD. The County and Culpepper were the only parties to the action. Here, in contrast, the NKCC was a party that would not have legal notice of the Tribe's petition if not named and served.

We likewise conclude that *Miller v. Issaquah Corp.*[22] is distinguishable. There, Miller named and served Mohl, the president and registered agent of the Issaquah Corporation, rather than the corporation itself. The corporation was an indispensable party because it held title to the real property involved in the challenged short plat. The court concluded that the error was the result of excusable ne-

[18]*Id.* at 173.

[19]*Id.* at 174.

[20]*Id.* at 175.

[21]*Id.*

[22]33 Wn. App. 641, 657 P.2d 334 (1983).

glect because Mohl and his wife were actively involved in the short plat application, and a memorandum from the city referred to the "Marvin Mohl Short Plat."[23] In the case before us, no such circumstances existed that could have misled the Tribe as to the identity of the necessary parties.

We conclude that the trial court did not err by dismissing the Tribe's petition.

### Standing

■ Because the Tribe's petition was properly dismissed, we do not need to decide whether it established its standing sufficiently to survive the summary judgment motion below. The Tribe's further participation in this action is limited to its role as a party to NKCC's petition. The scope of issues it may address is accordingly limited by the scope of NKCC's petition, because no timely responsive pleading was filed by the Tribe expanding the issues raised by NKCC.

NKCC and its members contend that the trial court erred by concluding that they did not assert sufficient facts regarding their standing to overcome the Screens' motion for summary judgment.

We must first address the Screens' argument that summary judgment is not the appropriate vehicle for a determination of standing under LUPA. We reject the argument.

■ ■ First, the Screens did not make this argument below. Therefore, they have not preserved it for appeal.[24] In addition, it was the Screens who brought a motion for summary judgment challenging standing. They cannot be permitted to argue on appeal that their own motion was erroneous.

■ Finally, the Screens' argument simply lacks merit. They base their argument on RCW 36.70C.080(2), which provides that the parties must "note all motions on jurisdictional and procedural issues for resolution at the

[23]*Id.* at 646-47.

[24]RAP 2.5(a).

initial hearing, except that a motion to allow discovery may be brought sooner." The statute further provides:

> The defenses of lack of standing, untimely filing or service of the petition, and failure to join persons needed for just adjudication are waived if not raised by timely motion noted to be heard at the initial hearing, unless the court allows discovery on such issues.[25]

The Screens contend that this statute creates a unique LUPA pretrial motion. But there is nothing in the statute to suggest that "motions" do not include CR 12 motions or summary judgment motions under CR 56(c). Rather, the statute seems to require simply that any motions based on jurisdictional or procedural issues be made at an initial hearing. We therefore apply the summary judgment standard of review.

■ When we review a summary judgment order, we undertake the same inquiry as the trial court.[26] We consider all facts and reasonable inferences from facts in the light most favorable to the nonmoving party.[27] If we determine that there is a dispute as to any material fact, then summary judgment is improper.[28] But if reasonable minds could reach only one conclusion from the admissible facts in evidence, summary judgment is proper.[29] We review questions of law de novo.[30]

The standing provision in LUPA states:

> Standing to bring a land use petition under this chapter is limited to the following persons:
>
> (1) The applicant and the owner of property to which the land use decision is directed;

---

[25]RCW 36.70C.080(3).

[26]*Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

[27]*Id.*

[28]*Marquis v. City of Spokane*, 130 Wn.2d 97, 105, 922 P.2d 43 (1996).

[29]*Id.*

[30]*Tydings*, 125 Wn.2d at 341.

(2) Another person aggrieved or adversely affected by the land use decision, or who would be aggrieved or adversely affected by a reversal or modification of the land use decision. A person is aggrieved or adversely affected within the meaning of this section only when all of the following conditions are present:

(a) The land use decision has prejudiced or is likely to prejudice that person;

(b) That person's asserted interests are among those that the local jurisdiction was required to consider when it made the land use decision;

(c) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the land use decision; and

(d) The petitioner has exhausted his or her administrative remedies to the extent required by law.[31]

The parties dispute whether the NKCC parties have asserted facts to establish that the County's decision prejudiced or is likely to prejudice them. They do not address the other three requirements.

There is no case law interpreting the "prejudiced or likely to prejudice" requirement in LUPA. The Screens contend that the provision is analogous to a provision in SEPA which states:

If a person aggrieved by an agency action has the right to judicial appeal and if an agency has an administrative appeal procedure, such person shall, prior to seeking any judicial review, use such agency procedure if any such procedure is available, unless expressly provided otherwise by state statute.[32]

The cases indicate that the courts have applied a two-part test for SEPA standing: (1) whether the interests the

---

[31]RCW 36.70C.060.

[32]RCW 43.21C.075(4).

plaintiff seeks to protect are arguably within the zone of interests protected or regulated by the State Environmental Policy Act (SEPA), and (2) whether the plaintiff alleges an injury in fact.[33] To show an injury in fact, the plaintiff must allege specific and perceptible harm.[34] If the plaintiff alleges a threatened rather than an existing injury, he or she "must also show that the injury will be 'immediate, concrete and specific'; a conjectural or hypothetical injury will not confer standing."[35]

■ The NKCC parties compare the LUPA standing provision to the Administrative Procedure Act (APA) provision regarding standing.[36] The two provisions are nearly identical. The prejudice prongs of the two standing tests are substantively identical. There are no cases specifically interpreting the prejudice requirement under the APA. However, authority indicates that the APA standing test was intended to codify some basic principles derived from standing case law.[37] The prejudice requirement in the APA appears to be a codification of the injury-in-fact requirement.[38] We therefore look to case law analyzing the injury-in-fact requirement to determine whether, viewing the facts in the light most favorable to the NKCC parties, there exists any genuine dispute regarding facts material to the standing inquiry.

A review of Washington land use cases analyzing the injury-in-fact requirement reveals some general principles. In general, parties owning property adjacent to a proposed project and who allege that the project will injure their

---

[33]*See Harris v. Pierce County*, 84 Wn. App. 222, 230-31, 928 P.2d 1111 (1996).

[34]*Id.*

[35]*Id.* at 231 (quoting *Leavitt v. Jefferson County*, 74 Wn. App. 668, 679, 875 P.2d 681 (1994)); *Anderson v. Pierce County*, 86 Wn. App. 290, 299, 936 P.2d 432 (1997).

[36]RCW 34.05.530.

[37]William R. Andersen, *The 1988 Washington Administrative Procedure Act-An Introduction*, 64 Wash. L. Rev. 781, 823-24 (1989).

[38]*See id.* at 824 (prejudice requirement may be met where the plaintiff can show that the potential injury is real).

property have standing.[39] The courts have denied standing where the petitioner does not allege facts showing that the challenged land use decision would lead to any specific injury.[40] Standing is also lacking when it is unclear that the ultimate land use action will necessarily lead to the impacts alleged by the plaintiff.[41] Here, we must consider the evidence in the light most favorable to the NKCC parties to determine whether these parties alleged that real, direct injury would result from the County's approval of the Screens' project.

## The NKCC's Standing

 The Screens raise a preliminary issue. They contend that NKCC does not have standing as an organization because it lacks the requisite structure. But the cases they cite to support their contention that a particular structure is required do not support their argument. Rather, they hold that an organization has standing only when at least one of its members has standing as an individual.[42] Thus, the inquiry here is whether the Screens have shown that there is no genuine dispute regarding material facts as to whether an individual NKCC member has standing.

---

[39]*Anderson*, 86 Wn. App. at 300 (holding that there was standing where chairman of organization testified that he owned property adjacent to project site and that proposed mitigation would be insufficient to control storm water runoff that would damage his property). *See also Save a Valuable Environment v. City of Bothell (SAVE)*, 89 Wn.2d 862, 868, 576 P.2d 401 (1978) (neighbors of proposed shopping center had standing where they alleged that a rezone to permit construction of the center would have serious detrimental effects on the environment and economy of the area).

[40]*Trepanier v. City of Everett*, 64 Wn. App. 380, 383-84, 824 P.2d 524 (holding that petitioner did not have standing where he offered only bare assertions that new zoning code reducing allowable densities in some parts of city would force new development into unincorporated county), *review denied*, 119 Wn.2d 1012 (1992); *Snohomish County Property Rights Alliance v. Snohomish County*, 76 Wn. App. 44, 53-54, 882 P.2d 807 (1994) (organization's affidavits offered only speculative conclusions regarding anticipated future effects of county-wide planning), *review denied*, 125 Wn.2d 1025 (1995).

[41]*Harris*, 84 Wn. App. at 231-32 (holding that property owner did not have standing to challenge adoption of plan for trails where allegedly injurious exercise of eminent domain would not be certain until a final engineering plan was approved).

[42]*East Gig Harbor Improvement Ass'n v. Pierce County*, 106 Wn.2d 707, 710, 724 P.2d 1009 (1986); *SAVE*, 89 Wn.2d at 867.

 The affidavits submitted by NKCC members are sufficient to establish the existence of genuine disputes of material fact regarding standing. Charlie Burrow, who lives 150 feet from the project, states that according to the EIS, there will be at least a 48 percent increase in traffic on South Kingston Road, the road in front of his property. He notes that this will affect him by increasing his risks in traveling on the road and increasing the traffic passing by his house. Jim Halstead, whose property is bordered on three sides by the project, alleges the same injuries from the increase in traffic predicted for South Kingston Road. Zane Thomas, who lives along roads that will be affected by the project, stated that he would be affected by the large predicted increase in traffic on two roads that provide primary access to his home. Evidence of this type of injury is sufficient to establish injury-in-fact.[43]

The Screens argue that the NKCC members cannot establish standing based solely on their proximity to the project site. But the NKCC members allege specific harms that will result from that proximity. They do not rely on their location alone.

 The Screens further contend that the NKCC members cannot rely on facts stated in the environmental impact statement (EIS) without also accepting the conclusions of that document. But the NKCC members may dispute the conclusions of the EIS authors regarding what injuries they will sustain as a result of the impacts the EIS describes.

 The Screens contend that a portion of the EIS contradicts the NKCC parties' claims about the increase in traffic on South Kingston Road. However, the referenced document simply shows that the increase on one portion of the road will be 33 percent, and on another portion will be 94 percent. The Screens further contend that the increases in traffic due to the project would be well within existing road capacities. But this does not establish the lack of a genuine dispute of material fact as to whether the NKCC

---

[43]*See Anderson*, 86 Wn. App. at 300.

members will be injured by the predicted traffic increase. The Screens' remaining arguments go to the *extent* of the injury the NKCC parties will sustain as a result of the traffic increase. But a party need not show a particular level of injury in order to establish standing.[44]

Because the NKCC parties have shown that there is a genuine dispute of material fact as to whether they will be injured by the project, the trial court erred by granting summary judgment and dismissing their petition.

### Attorney Fees

We reject the Screens' request for attorney fees from this court under RCW 4.84.370(1) because they are not the substantially prevailing party in this action.

We affirm the portion of the trial court's order dismissing the Tribe's petition, and reverse the portion of the order dismissing the NKCC's petition. We remand for further proceedings as to NKCC's petition.

GROSSE and WEBSTER, JJ., concur.

---

[44]*See* Andersen, 64 WASH. L. REV. at 824 (citing *United States v. SCRAP*, 412 U.S. 669, 689 n.14, 93 S. Ct. 2405, 37 L. Ed. 2d 254 (1973)).