

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DANIEL P. THOMPSON and THEODORE MISSELWITZ, | ) ) ) | No. 72809-1-I |
| Appellants, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| CITY OF MERCER ISLAND, | ) ) | UNPUBLISHED OPINION |
| Respondent, | ) ) ) | FILED: March 14, 2016 |
| ANDERSON ARCHITECTURE, Applicant, and ON THE ROCK, Owner, | ) ) ) | |
| Additional Parties Pursuant to RCW 36.70C.040(2)(b)-(d). | ) ) ) ) | |

BECKER, J. — Daniel Thompson and Theodore Misselwitz appeal the trial court's dismissal of their land use petition for lack of standing. Misselwitz lacks standing because he failed to exhaust his administrative remedies under Mercer Island's city code. Thompson lacks standing because he fails to demonstrate that he was prejudiced by the land use decision. We affirm.

## FACTS

On the Rock, a limited liability company, owned two vacant lots located on Mercer Island. In 2009, the city of Mercer Island approved a short plat dividing

the vacant lots into two 12,000-square-foot buildable lots. The short plat created a private access and utility easement across lot one for the benefit of lot two. The entire area of the easement was characterized as impervious surface, which is hard surface that prevents water from entering the soil. Mercer Island's city code limits the maximum impervious surface of a lot to 35 percent of its gross square foot area. With the easement on lot one, there was that much less of an allowance of surface remaining for the building footprint, patios, and driveways, all of which would also count as impervious surface.

Seeking to avoid this limitation, On the Rock, through Anderson Architecture, filed an application to amend the 2009 short plat in early July 2013. The proposal was to alter the existing easement by turning part of it into a separate tract, called Tract X. Tract X would serve as a private roadway to access both lots. Tract X would be jointly owned by the owners of both lots. Under the Mercer Island City Code, Tract X would not count as impervious surface area against either lot. According to On the Rock, an additional 750 square feet of usable impervious surface area would thereby become available for the development of lot one.

A public comment period followed the filing of the application. Daniel Thompson is a neighbor to the property at issue. Thompson submitted written comments in opposition to the proposed short plat.

A Mercer Island city planner approved the preliminary short plat application on February 3, 2014. Thompson appealed the city planner's decision to the Mercer Island Planning Commission. A public open record appeal hearing

2

was held before the planning commission on July 23, 2014. As the only appellant, Thompson was allotted 25 minutes to speak. Misselwitz, who lives just north of the property at issue, attended the appeal hearing as a member of the public. He was allotted 3 minutes to speak. At the end of the hearing, the planning commission voted to uphold the city planner's approval and deny Thompson's appeal. On July 28, 2014, the planning commission issued its written decision.

On August 14, 2014, Thompson and Misselwitz appealed the planning commission's decision by filing a land use petition in superior court as authorized by the Land Use Petition Act, chapter 36.70C RCW. On the Rock and Anderson Architecture, as owner and applicant on the land use decision, were named as additional parties.

The city and On the Rock moved to dismiss the land use petition, arguing that both Thompson and Misselwitz lacked standing to file a land use petition. On November 7, 2014, the trial court granted the motion to dismiss. Thompson and Misselwitz appeal, arguing that they both have standing.

## TIMELINESS OF MOTIONS TO DISMISS

On the Rock and the city both filed their motions to dismiss based on lack of standing on October 23, 2014. They noticed hearing for October 31, 2014. Appellants contend the motions to dismiss were untimely.

Appellants argue that, according to a local court rule, motions to dismiss are subject to the scheduling requirements of CR 56, requiring 28 days' notice. The local rule states that deadlines for such motions "shall be as set forth in CR

3

56 and the Order Setting Case Schedule." LCR 56(c)(2). Appellants cannot evade the plain language of the local rule, which contemplates that deadlines will be set in the case schedule order.

The case schedule order issued for this case stated that "motions on jurisdictional and procedural issues shall comply with Civil Rule 7 and King County Local Rule 7, except that the minimum notice of hearing requirement shall be 8 days." Appellants do not persuasively explain why a motion to dismiss for lack of standing should not be characterized as a motion on a jurisdictional or procedural issue.

While neither party has cited case authority exactly on point, we note that the Supreme Court in another context has referred to standing under the Land Use Petition Act as "jurisdictional." Knight v. City of Yelm, 173 Wn.2d 325, 336, 267 P.3d 973 (2011). The statute itself calls for motions on "jurisdictional and procedural issues" to be noted for resolution at the initial hearing, and it provides that the defense of "lack of standing" also is to be raised by timely motion noted for the initial hearing—in contrast to a hearing "on the merits," which can occur later. RCW 36.70C.080(2)-(4). We conclude it is most consistent with the statute to interpret the local rule as including a motion to dismiss for lack of standing in the category of a motion on a jurisdictional or procedural issue. Such motions under the case schedule order require only eight days' notice. On the Rock and the city complied with the superior court's case schedule order because they filed their motions to dismiss based on lack of standing exactly eight days before the scheduled hearing.

Because the motions to dismiss complied with the superior court's case schedule order, they were not untimely.

## MISSELWITZ LACKED STANDING

The trial court found that Misselwitz lacked standing because he failed to exhaust his administrative remedies. Appellants assign error to this determination. Our review is de novo. See, e.g., City of Burlington v. Washington State Liquor State Control Board, 187 Wn. App. 853, 861, 351 P.3d 875 (2015).

A person who claims to be aggrieved or adversely affected by a land use decision has standing to bring a land use petition only if he has exhausted his administrative remedies to the extent required by law. RCW 36.70C.060(2)(d). "The Legislature sensibly confined the category of non-owners eligible to seek judicial review of such decisions to those who participated in the administrative process to the extent allowed. This approach vests greatest discretion in local decisionmakers, and is thus consistent with the Legislature's policy to accord deference to local government and allow only limited judicial interference." Ward v. Bd. of Skagit County Comm'rs, 86 Wn. App. 266, 271-72, 936 P.2d 42 (1997).

The Mercer Island City Code outlines the administrative approval process for a preliminary short plat application. Upon receiving the application, the city issues a public notice of the application. The notice must include a statement that only people who submit written comments will be parties of record and only parties of record will receive notice of the decision and have the right to appeal. MICC 19.15.020(E)(2)(e). After the public comment period, the city issues its

decision. Any party of record may appeal the decision to the Mercer Island Planning Commission by filing a letter of appeal with the city clerk. MICC 19.15.020(J)(1), .010(E). The city issues a public notice of the appeal. MICC 19.15.020(J)(4). An open record appeal hearing is then held before the planning commission, which issues the final administrative decision. MICC 19.15.020(J)(5)(b), .010(E). The planning commission's decision may be appealed "by a party of record with standing to file a land use petition in King County Superior Court." MICC 19.15.020(J)(5)(g).

Misselwitz did not submit written comments in response to the city's public notice of application. He did not file a letter of appeal to the planning commission. He did, however, attend and speak at the open record appeal hearing that occurred on July 23, 2014, before the planning commission. This participation did not confer standing to appeal the planning commission's decision to superior court because he spoke only as a member of the public, not as an appellant. Because Misselwitz did not use the administrative process to protest the application, he failed to exhaust administrative remedies.

Appellants argue that Misselwitz nevertheless has standing because of the wording of the public notice appeal form sent to him and to other neighboring property owners by the city. The form, "Public Notice of Open Record Appeal Hearing," states: "Only those persons who submit written comments or testify at the open record hearing will be parties of record; and only parties of record will receive a notice of the decision and have the right to appeal." Appellants argue that Misselwitz, by virtue of this form, became a party of record and acquired the

right to appeal to superior court because he testified at the July 23 open record hearing before the planning commission. The city concedes that the form language is mistaken. Under the city code, one becomes a party of record by submitting written comments on the initial application, and only a party of record has the right to appeal the administrative staff approval to the planning commission. The notice sent to Misselwitz incorrectly made it appear that he would become a party of record simply by speaking before the planning commission. The incorrect notice, however, does not override the provisions of the city code for purposes of determining whether Misselwitz exhausted his remedies. Misselwitz's opportunity to become a party of record occurred well before he received the public notice of open record appeal hearing. Unlike Thompson, Misselwitz did not submit written comments about the application and did not appeal the decision to the planning commission. These are the steps in the administrative process that he failed to complete.

Appellants further argue that Misselwitz did not need to exhaust administrative remedies to have standing on his own because he was in effect joining Thompson, who did become a party of record with the right to appeal to the planning commission. This argument contradicts the plain statutory language requiring exhaustion of remedies, which is written in the singular person: "A person is aggrieved or adversely affected . . . when . . . the petitioner has exhausted his or her administrative remedies to the extent required by law." RCW 36.70C.060(2).

7

Appellants rely on Jones v. The Town of Hunts Point, 166 Wn. App. 452, 456, 272 P.3d 853 (2011), review denied, 174 Wn.2d 1016 (2012). That case is not about exhaustion of remedies. It is not helpful in deciding whether Misselwitz has standing.

We conclude Misselwitz lacked standing to file a land use petition in superior court because he failed to exhaust his administrative remedies.

THOMPSON LACKED STANDING

The trial court found that Thompson lacked standing because he did not establish that he was personally prejudiced by the land use decision. Appellants assign error to this determination.

An allegedly aggrieved person has standing to file a land use petition only if he shows that the land use decision has prejudiced him, or is likely to. RCW 36.70C.060(2)(a). To satisfy the prejudice requirement, a petitioner must show that he would suffer injury in fact as a result of the land use decision. Chelan County v. Nykreim, 146 Wn.2d 904, 934, 52 P.3d 1 (2002). To show an injury in fact, the petitioner must allege a "'specific and perceptible'" harm. Knight, 173 Wn.2d at 341, quoting Suquamish Indian Tribe v. Kitsap County, 92 Wn. App. 816, 829, 965 P.2d 636 (1998). If the petitioner alleges a threatened rather than an existing injury, he "'must also show that the injury will be immediate, concrete and specific; a conjectural or hypothetical injury will not confer standing.'" Suquamish, 92 Wn. App. at 829, quoting Harris v. Pierce County, 84 Wn. App. 222, 231, 928 P.2d 1111 (1996) (internal quotation marks omitted).

8

In Suquamish, there was evidence that Indian tribal members, one of whom lived 150 feet from the proposed project and another whose property would be surrounded on three sides by the proposed project, would be affected by the large predicted increase in traffic. This evidence was held sufficient to establish injury in fact. Suquamish, 92 Wn. App. at 831. In another case, a petitioner owned land 1,300 feet away from the proposed subdivisions and alleged that the development's use of an already-overdrawn aquifer would adversely affect her ability to exercise her senior water rights. Knight, 173 Wn.2d at 342-43. These allegations were held sufficient to establish injury in fact. Knight, 173 Wn.2d at 343. In another case, a petitioner testified that his 60-acre property adjacent to the proposed project would be damaged by storm water runoff from the proposed project site. This too was held sufficient to establish injury in fact. Anderson v. Pierce County, 86 Wn. App. 290, 300, 936 P.2d 432 (1997).

In contrast, in Nykreim, four married couples who owned property upstream from the property at issue alleged that their sole interest in the matter was to preserve zoning protections in their district. Unaccompanied by other allegations alleging specific injuries to petitioners or their properties, this interest was too abstract to confer standing. Nykreim, 146 Wn.2d at 935. To have standing, a petitioner's interest "must be more than simply the abstract interest of the general public in having others comply with the law." Nykreim, 146 Wn.2d at 935.

Thompson believes the creation of Tract X violates the city's code and comprehensive plan for land use, as well as Washington law. His land use petition identifies 11 legal errors surrounding the creation and approval of Tract X. But it does not allege any specific injury to Thompson or his property. Thompson's sole interest is trying to enforce zoning protections in his neighborhood. His abstract interest in having others comply with the law is not enough to confer standing. See Nykreim, 146 Wn.2d at 935.

Thompson argues that this court must assume his allegations of legal error are true and "presume" harm to adjacent property. He argues that the proposed short plat application violates principles in the Mercer Island City Code that promote "air, light, open space, adequate roads, sufficient area to subdivide, consistent bulk and scale, prevention of overcrowding of land, all of which provide attractive neighborhoods and affect the value of surrounding property." He predicts that the "ultimate result" of this proposed short plat will be houses that are inconsistent with the zone and neighborhood, overcrowd land, create a negative effect on open space, air, light, comfort and aesthetics, and diminish the value of surrounding properties like his own.

Thompson does not cite authority allowing a court to presume harm. Granting that the creation of Tract X will increase the amount of impervious surface area available for development on lot one, Thompson has failed to show any "'immediate, concrete, and specific'" injury. Suquamish, 92 Wn. App. at 829, quoting Harris, 84 Wn. App. at 231 (internal quotation marks omitted). Because

Thompson failed to show that the creation of Tract X prejudiced him, or is likely to, he lacked standing to bring a land use petition.

## MOTION FOR SUBSTITUTION

On the Rock executed a statutory warranty deed conveying the property at issue to GIB Development LLC on August 12, 2014, two days before appellants filed their land use petition in superior court. The deed was recorded on August 19, 2014.

On June 16, 2015, On the Rock filed a motion to substitute GIB Development as the new owner of the property at issue. In support of the motion, On the Rock's attorney stated that he did not become aware that the property at issue had been conveyed to GIB Development until June 1, 2015, after he received a letter from an attorney representing appellant Misselwitz in a separate matter. Both limited liability companies are under the effective management authority of the same person, Scott Gibson. Gibson's attached affidavit stated that his tax advisors told him that the property at issue was more appropriately held by GIB Development because he planned to develop it. Gibson further stated that the failure to substitute GIB Development as the new owner was purely an oversight.

Appellants opposed On the Rock's motion to substitute. On June 16, 2015, they filed a motion asking this court to vacate the trial court's order of dismissal and remand. In June and July 2015, appellants filed additional motions to supplement the record with further evidence supporting their request to vacate and remand, to strike On the Rock's motion to substitute for lack of standing, to

11

compel On the Rock to submit further evidence regarding why it transferred the property at issue, and for judicial estoppel and attorney fees if this court vacates and remands.

On the Rock's motion to substitute is proper under the plain language of RAP 3.2(a): "The appellate court will substitute parties to a review when it appears . . . that the interest of a party in the subject matter of the review has been transferred." The property at issue has been transferred from On the Rock to GIB Development.

On the Rock further requests that the substitution relate back to the time the appellants' land use petition was filed. RAP 3.2 neither expressly permits nor prevents a substitution to relate back to the time of filing. Miller v. Campbell, 164 Wn.2d 529, 536-37, 192 P.3d 352 (2008). In Miller, the court allowed the substitution to relate back to the time of original filing because the party opposing substitution was not prejudiced. Miller, 164 Wn.2d at 538. Likewise here, appellants will not be prejudiced if GIB Development is substituted for On the Rock. GIB Development acknowledges that it will be bound by this court's decision on the merits. The identity of the limited liability company that holds the property is irrelevant to the basis on which the appellants opposed the land use decision—legal errors regarding the creation and approval of Tract X—and to the basis on which their land use petition was denied—lack of standing.

Appellants argue that substitution or joinder is available only at the trial court under CR 17(a) or CR 19 and that it requires consideration of inexcusable neglect under CR 15(c). In support of this proposition, appellants cite Stella

Sales, Inc. v. Johnson, 97 Wn. App. 11, 17-20, 985 P.2d 391, review denied, 139 Wn.2d 1012 (1999). But Stella Sales addressed substitution in the trial court; it does not discuss substitution on appeal under RAP 3.2.

We grant On the Rock's motion to substitute GIB Development. That substitution will relate back to the time the appellants' land use petition was filed. We deny the appellants' motion to vacate the order of dismissal. The remaining motions filed by appellants are also denied.

Affirmed.

Becker, J.

WE CONCUR:

Trickey, J

Jan, J