# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BEHIND THE BADGE FOUNDATION, DANIEL J. EVANS, GARY LOCKE; JOHN SPELLMAN, CHRIS GREGOIRE, RALPH MUNRO, KAREN FRASER, SUSAN OLMSTED, JANE HASTINGS, MICHAEL S. HAMM, CAPITOL OLYMPIC PARK FOUNDATION, OLYMPIA ISTHMUS PARK ASSOCIATION, ROBERT V. JENSEN, GERALD REILLY, BOB JACOBS, THE NATIONAL ASSOCIATION OF OLMSTED PARKS, THE FRIENDS OF SEATTLE'S OLMSTED PARK, THE FRIENDS OF THE WATERFRONT, AND THE BLACK HILLS AUDUBON SOCIETY, | No. 53063-5-II |
| Appellants, | |
| v. | |
| CITY OF OLYMPIA; VIEWS ON 5TH, LLC; and CAPITAL VENTURE GROUP, LLC, | UNPUBLISHED OPINION |
| Respondents. | |

LEE, J. — The appellants[1] appeal the superior court's order dismissing their petition under

the Land Use Petition Act (LUPA), chapter 36.70C, for lack of standing. Because the appellants

---

[1] The appellants refer collectively to all the petitioners in this case: Behind the Badge Foundation, Daniel J. Evans, Gary Locke, Chris Gregoire, Ralph Munro, Karen Fraser, Susan Olmsted, Jane Hastings, Michael S. Hamm, Capitol Olympic Park Foundation, Olympia Isthmus Park Association, Robert V. Jensen, Gerald Reilly, Bob Jacobs, The National Association of Olmsted Parks, The Friends of Seattle's Olmsted Parks, The Friends of the Waterfront, and the Black Hills Audubon Society.

cannot show that (1) they are prejudiced by the land use decision, (2) their asserted interests are not among those required to be considered, and (3) judgment in their favor would not redress the asserted prejudice, as required by statute, the superior court did not err by dismissing the appellants' LUPA petition for lack of standing. Accordingly, we affirm.

FACTS

A.    BACKGROUND

In 1911, Wilder and White designed an architectural plan for the Capitol Campus in Olympia. In 1928, the Olmsted brothers designed the landscape and park plan for the developing Capitol Campus. Both plans integrated the surrounding landscapes—the Cascade Mountains, the Puget sound, and the Budd Inlet—into the designs. The plans included view corridors that provided views of these surrounding landscapes.

Later, the plans were further implemented with the creation of Capitol Lake. The intersection of Capitol Lake and Budd Inlet create the area of downtown Olympia known as the Isthmus. The Isthmus is located within one of the view corridors designed into the 1911 Wilder and White and 1928 Olmsted Brothers Capitol Campus design plans.

In the 1960s, the Capitol Center Building was constructed on the Isthmus. The Capitol Center Building was nine stories, high and was used as an office building until early 2006. The Capitol Center Building was consistent with the relevant zoning and building regulations at the time. After the Capitol Center Building ceased being used as an office building it was left vacant.

There have been zoning changes through the years, but the area has had a building height limit of 35 feet since January 1, 2011. People have objected to the Capitol Center Building because it is over the current 35 feet building height limitation in place on the Isthmus and interferes with

No. 53063-5-II

the view corridor between the Capitol Campus and the water. However, the Capitol Center

Building remains a lawful nonconforming structure.

B.    CAPITOL CENTER BUILDING RENOVATIONS

In 2011, the City issued a land use approval and determination of non-significance (DNS)[2]

authorizing a developer to renovate the Capitol Center Building into a hotel, which was challenged.

The Hearing Examiner found that:

> [T]he Wilder and White and Olmsted plans all incorporated the majestic views to
> the north as conspicuous elements of their designs. . . . In views from the Capitol
> grounds, the Capitol Center Building intrudes into this imagination, like an errant
> thumb into a photo of Mt. Rainer. In any reasoned view of these circumstances,
> this building is contrary to and inconsistent with the design elements and overall
> concept of the Wilder and White and Olmsted plans for the State Capitol Group.

Clerk's Papers (CP) at 366. Despite the Capitol Center Building's effect on the views to and from

the Capitol Campus, the Hearing Examiner affirmed the land use approval. The Hearing Examiner

summarized the basis for the decision:

> [T]his proposal would make no changes to the height, width or bulk of the building
> and would not increase light or glare. Further, the law does not allow an otherwise
> legal conversion to be denied, simply because it would make removal of the
> building more likely. Thus, this proposal to convert has no effect on views or on
> the design principles or Comprehensive Plan provisions at issue. For this and the
> other reasons discussed above, under the law the appeal must be denied and the
> Land Use Approval and DNS upheld.
>
>         The Olmsted and Wilder and White plans combined buildings evoking the
> classical roots of democracy with the perspective and longer view evoked by the
> prospect of sea and mountains. The Capitol Center Building sets back this
> inspiration to civic stewardship. Nonetheless, perhaps this decision serves the
> deeper values evoked by the design, in that it elevates the requirements of law over
> the invitations of desire.

---

[2] *See* RCW 43.21C.031.

No. 53063-5-II

CP at 384.

The DNS was also challenged because the property was within Shoreline Management Act (SMA) jurisdiction. The Hearing Examiner found that the project was originally within the SMA jurisdiction because a portion of the attached parking lot was within the SMA jurisdiction. However, the developer conveyed the parking lot to another entity, removing the proposed project from the SMA jurisdiction. Therefore, the Hearing Examiner found that,

> The Shoreline Hearings Board decision in Sato v. Olympia, SHB No. 81-84 (1982), leaves little doubt that the building at issue could not be approved under the SMA if proposed today. However, neither construction nor enlargement of the building is proposed. The proposal is to remodel the inside and convert the use of the structure to a hotel. The height, width and profile of the building would remain unchanged. … [T]he proposal at issue would do nothing to change or affect any views. Therefore, if the SMA applied to a proposal outside the shoreline due to its adverse effect on the shorelines, the evidence shows no such adverse effects of this proposal. Under the SMA provisions and case law discussed above, this proposal is entirely outside SMA jurisdiction and is not subject to that Act.[3]

CP at 376-77. Ultimately, the redevelopment of the Capitol Center Building into a hotel was not completed.

C.    CURRENT CAPITOL CENTER DEVELOPMENT (VIEWS ON 5TH)

In 2017, Views on 5th began the process of renovating the Capitol Center Building into a mixed-use apartment/retail complex (the Project) by filing a land use application with the City. The Capitol Center Building was the main focus of the Project and was intended to be renovated within its current dimensions. The Project would include two additional structures, both under 35

---

[3] To prevent piecemeal development and improper avoidance of the SMA, the Hearing Examiner included a condition prohibiting any commercial use of the property from using the parking lot that was conveyed away from the project. The condition in the 2011 decision was reviewed, remanded, and revised several times due to the developer's LUPA appeals. However, the rest of the 2011 decision was affirmed.

4

feet in height. One building would include an automated parking structure and apartments. The other building would be apartments.

1.      Land Use Permit

In its land use permit application, Views on 5th submitted a full traffic impact analysis for the Project. Views on 5th also submitted the geotechnical engineering report with its land use permit application to address the potential impact of earthquakes, liquefaction, and flooding on the area.

Before issuing a decision on the land use permit application, the City held a neighborhood meeting to invite public comment. The City also accepted public comments. Hundreds of people submitted public comments for consideration by the City. Supporters of the Project thought that it was important to bring new housing and business options to the area. Opponents of the Project generally objected because the building interfered with the Capitol Campus View Corridor, the development would adversely affect traffic in the area, the Project was unsafe because of the risks caused by earthquakes and flooding, or a combination of these reasons. The majority of opponents to the Project expressed their desire to have the Capitol Center Building demolished and replaced with a park.

After the public comment period ended and the City held a public hearing, the City issued a staff report outlining the City's recommendations for the Project. The staff report explained that the Capitol Center Building could be renovated as it was because it was a nonconforming building rather than a nonconforming use. Under the City code, a nonconforming building is a building that was legal and complied with building restrictions at the time it was constructed but does not

comply with current building restrictions. A nonconforming building can be renovated so long as the renovation does not increase the building's nonconformity.

Following a public hearing on the land use application, the Hearing Examiner issued findings of fact and conclusions of law. The Hearing Examiner found that the proposal met all requirements for approval subject to certain conditions and approved the land use permit for the Project subject to the conditions outlined in the decision.

2. State Environmental Policy Act

While the land use permit was being sought, Views on 5th submitted a State Environmental Policy Act (SEPA) checklist for review by the City's SEPA official. The checklist stated that both Capitol Lake and Budd Inlet were approximately 500 feet from the site and that the project was outside the SMA jurisdiction because it was more than 200 feet from the ordinary high water marks of either body of water. The SEPA checklist also included a species list documenting native plants and animals near the site. And the SEPA checklist identified the possibility of toxic materials and contamination in the building and site from past uses, as well as a geotechnical engineering report. A traffic impact report was also included with the SEPA checklist. Ultimately, the SEPA official issued a DNS because the project was not within the SMA jurisdiction and probably would not have a significant adverse impact on the environment.

The appellants appealed the SEPA DNS decision while the land use permit process was ongoing (the SEPA appeal). Views on 5th filed a motion for summary judgment in the SEPA appeal of the DNS. The Hearing Examiner granted Views on 5th's motion for summary judgment and dismissed the appellants' SEPA appeal.

3.      Reconsideration

The appellants filed motions to reconsider both the SEPA appeal of the DNS and the land use decision approving the land use permit for the Views on 5th Project. The Hearing Examiner denied both motions for reconsideration.

D.      LUPA PETITION

The appellants filed a LUPA petition challenging both the SEPA DNS decision and the land use decision authorizing renovation of the Capitol Center Building. In their petition, the appellants asserted that their standing to file the petition was based on their interest in preserving and protecting the Capitol Campus view corridor, ensuring the property is developed consistent with the "City's Comprehensive and Parks Plan and the State Master Plan for the State Capitol Campus," and "protecting against the adverse effects of building in a seismic liquefaction zone, a flood zone, and on a property polluted with petroleum waste." CP at 6. The appellants also asserted prejudice caused by violations of SEPA and SMA regulations.

Views on 5th filed a motion to dismiss the appellants' LUPA petition for lack of standing under RCW 36.70C.060(2).[4] The City joined the Views on 5th's motion to dismiss.

---

[4] RCW 36.70C.060 states,

Standing to bring a land use petition under this chapter is limited to the following persons:
        (1) The applicant and the owner of property to which the land use decision is directed;
        (2) Another person aggrieved or adversely affected by the land use decision, or who would be aggrieved or adversely affected by a reversal or modification of the land use decision. A person is aggrieved or adversely affected within the meaning of this section only when all of the following conditions are present:
        (a) The land use decision has prejudiced or is likely to prejudice that person;

The superior court found that the appellants failed to show that they were prejudiced or likely to be prejudiced by the land use decisions as required by RCW 36.70C.060(2)(a). The superior court also found that the appellants' asserted interests were not among those that the local jurisdiction was required to consider as required by RCW 36.70C.060(2)(b). Therefore, the superior court concluded the appellants lacked standing to bring the LUPA petition. The superior court granted the Views on 5th motion and dismissed the appellants' LUPA petition.

Appellants appeal the superior court's dismissal of their LUPA petition for lack of standing.

ANALYSIS

A.    LEGAL PRINCIPLES

We review the superior court's decision on a motion to dismiss de novo. *See Nickum v. City of Bainbridge Island*, 153 Wn. App. 366, 373-74, 223 P.3d 1172 (2009). Standing under LUPA is jurisdictional. *Knight v. City of Yelm*, 173 Wn.2d 325, 336, 267 P.3d 973 (2011). We review issues of jurisdiction and standing de novo. *Id*.

LUPA is the exclusive means of obtaining review of land use decisions, with certain exceptions not applicable here.[5]    RCW 36.70C.030.    LUPA provides explicit statutory

_____

(b) That person's asserted interests are among those that the local jurisdiction was required to consider when it made the land use decision;

(c) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the land use decision; and

(d) The petitioner has exhausted his or her administrative remedies to the extent required by law.

[5] RCW 36.70C.030 provides,

requirements to establish standing. RCW 36.70C.060. If the party filing the LUPA petition is not

the applicant or the owner of the property subject to the land use decision, standing is limited to:

> Another person aggrieved or adversely affected by the land use decision, or who would be aggrieved or adversely affected by a reversal or modification of the land use decision. A person is aggrieved or adversely affected within the meaning of this section only when all of the following conditions are present:
> (a) The land use decision has prejudiced or is likely to prejudice that person;
> (b) That person's asserted interests are among those that the local jurisdiction was required to consider when it made the land use decision;
> (c) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the land use decision; and

---

> (1) This chapter replaces the writ of certiorari for appeal of land use decisions and shall be the exclusive means of judicial review of land use decisions, except that this chapter does not apply to:
> (a) Judicial review of:
> (i) Land use decisions made by bodies that are not part of a local jurisdiction;
> (ii) Land use decisions of a local jurisdiction that are subject to review by a quasi-judicial body created by state law, such as the shorelines hearings board or the growth management hearings board;
> (b) Judicial review of applications for a writ of mandamus or prohibition; or
> (c) Claims provided by any law for monetary damages or compensation. If one or more claims for damages or compensation are set forth in the same complaint with a land use petition brought under this chapter, the claims are not subject to the procedures and standards, including deadlines, provided in this chapter for review of the petition. The judge who hears the land use petition may, if appropriate, preside at a trial for damages or compensation.
> (2) The superior court civil rules govern procedural matters under this chapter to the extent that the rules are consistent with this chapter.

This appeal does not involve judicial review of a land use decision that is not part of a local jurisdiction or claims for monetary damages. And although the SEPA DNS decision rests, in part, on the determination that the Capitol Center Building is not within SMA jurisdiction, the Shorelines Hearings Board only has jurisdiction over decisions granting, denying, or rescinding permits issued under the SMA; it does not have jurisdiction over land use decisions determining that the SMA does not apply. RCW 90.58.180(1); *See Samuel's Furniture, Inc. v. Dep't of Ecology*, 147 Wn.2d 440, 451, 54 P.3d 1194 (2002). Therefore, the City's SEPA DNS decision is reviewed under LUPA rather than appealable to the Shorelines Hearings Board.

(d) The petitioner has exhausted his or her administrative remedies to the extent required by law.

RCW 36.70C.060(2). The party bringing the LUPA petition has the burden to show all the required conditions of standing are satisfied. RCW 36.70C.060(2); *see Knight*, 173 Wn.2d 341-42.

B.     STANDING UNDER LUPA

The appellants argue that the superior court erred by dismissing their LUPA petition for lack of standing. However, the appellants' argument that they have standing under LUPA fails to address the statutory requirements for standing under LUPA.

Views on 5th argues that the appellants fail to satisfy the first three statutory requirements of standing under LUPA. The City has joined in Views on 5th's briefing and argument. We agree with Views on 5th.

1.     Prejudice

The first condition that must be established to show that a party is aggrieved for the purpose of standing under LUPA is prejudice or likely prejudice resulting from the land use decision. RCW 36.70C.060(2)(a). To satisfy this condition, the petitioner must show an "'injury-in-fact.'" *Knight*, 173 Wn.2d at 341 (quoting *Chelan County v. Nykrem*, 146 Wn.2d 904, 934, 52 P.3d 1 (2002)). As our Supreme Court explained,

> "To show an injury in fact, the plaintiff must allege specific and perceptible harm. If the plaintiff alleges a threatened rather than an existing injury, he or she 'must also show that the injury will be immediate, concrete, and specific; a conjectural or hypothetical injury will not confer standing.'" *Suquamish Indian Tribe v. Kitsap County*, 92 Wn. App. 816, 829, 965 P.2d 636 (1998) (footnote omitted) (internal quotation marks omitted) (quoting *Harris v. Pierce County*, 84 Wn. App. 222, 231, 928 P.2d 1111 (1996)). "'[A] party need not show a particular level of injury in

order to establish standing'" under LUPA. *Nykriem*, 146 Wn.2d at 935 (alteration in original) (quoting *Suquamish*, 92 Wn. App. at 832).

*Knight*, 173 Wn.2d at 341. Generally, owners of nearby property that may be injured by the proposed project will have standing under LUPA. *Id.* at 341, 343-44 (adjacent property owner with senior water rights to the same aquifer as the proposed project demonstrated injury-in-fact); *Suquamish*, 92 Wn. App. at 829-31 (members of tribe living near project demonstrated injury-in-fact because of the impact of traffic on their nearby properties).

Here, appellants argue that they have been prejudiced and suffered an injury-in-fact because of the Capitol Center Building's impact on the Capitol Campus view corridor. Specifically, the appellants assert that they "have been involved for decades to implement the 1911 Wilder and White Plan and the 1928 Olmstead [sic] Brothers Plan for the State Capitol Campus which includes the view corridor from the Washington State Law Enforcement Memorial and North Campus Trail." Br. of Appellants at 8. And the appellants argue they "have standing to protect the 1928 Olmsted Brothers and 1911 Wilder and White view corridor to and from the Capitol Campus across Capitol Lake to the borrowed landscapes of Puget Sound and the Olympic Mountains." Br. of Appellants at 18. Ultimately, the appellants argue they will suffer an injury because the Views on 5th project "will cause the damaging effect and detrimental impact that that [sic] the applicable law clearly seeks to prevent." Br. of Appellants at 18.

The appellants are clear that the injury they will suffer is the interference with the view corridor to and from the Capitol Campus contemplated in the 1911 Wilder and White plan and the 1928 Olmsted Brother plan. However, this argument appears to ignore the fact that the Capitol Center Building has been interfering with the view corridor since it was legally constructed in the

1960's. Because the building already exists and has interfered with the view corridor for over 50 years, approval of the current proposed project is not *causing* the injury the appellants are seeking to prevent. The land use decision at issue—the City's decision to grant the land use permit—cannot prejudice the appellants by causing an interference with the view corridor because the interference with the view corridor exists regardless of whether the City approved the land use permit.

In their LUPA petition, the appellants also argued that the land use permit violates City ordinances regarding flooding, traffic, and building regulations. The appellants further argued that the City's DNS decision violates SEPA and the SMA environmental regulations. On appeal, however, the appellants do not appear to contend that these arguments satisfy the injury-in-fact requirement. But even if they did make such a contention, the contention must fail. Members of the general public do not have standing to enforce the abstract interest in having others comply with law. *Nykriem*, 146 Wn.2d at 935. Therefore, because the appellants are third parties and members of the public, they cannot demonstrate standing simply by asserting that the land use decisions at issue fail to comply with the applicable law.

Moreover, none of the appellants have asserted or even argued that they will suffer any individual prejudice resulting from the alleged violations of the law. As Views on 5th points out, none of the appellants have established that they live in the area or allege that they would be residing in or near the proposed Project. Therefore, there could be no injury-in-fact to the appellants based on the failure to comply with the various City ordinances and SEPA/SMA regulations. Accordingly, the appellants have not shown that the land use decision has prejudiced or is likely to prejudice them.

2.      Zone of Interest

The second condition to establish standing requires showing that the appellants' interests are within the zone of interests the City was required to consider in making its land use decision. RCW 36.70C.060(2)(b).  "'[A]lthough the zone of interest test serves as an additional filter limiting the group which can obtain judicial review of an agency decision, the 'test is not meant to be especially demanding.'" *Nykriem*, 146 Wn.2d at 937 (quoting *Seattle Bldg. & Constr. Trades Council v. State Apprenticeship & Training Council*, 129 Wn.2d 787, 797, 920 P.2d 581 (1996), *cert. denied*, 520 U.S. 1210 (1997)).  "'The test focuses on whether the Legislature intended the agency to protect the party's interest when taking the action at issue.'" *Id.* (quoting *Seattle Bldg. & Constr. Trades Council*, 129 Wn.2d at 797).

The appellants do not specifically direct any of their arguments to this statutory requirement.  However, the appellants do argue that because City ordinances require the City to provide public notice and accept public comment, public interests and opinions are within the zone of interests required to be considered by the City.  Br. of Appellants at 16 ("In short, in every step of the way of the permitting process, the City of Olympia invites neighboring property owners and members of the public to participate in the land use review and permitting process.  Petitioners are doing exactly what they are required to do under law.")  We disagree.

Simply because the City has ordinances that require the City to invite public participation in the land use and permitting process, the interests of any member of the public do not become within the zone of interest the City was required to consider in making the land use decision at issue.  Moreover, LUPA requires that the "*person's asserted interests*" are among those the City was required to consider.

Here, the appellants' asserted interests are to implement the 1911 Wilder and White plan and the 1928 Olmsted Brothers plan and to protect the view corridor to and from the Capitol Campus. But the appellants have not shown that the City was required to consider the 1911 Wilder and White plan or the 1928 Olmsted Brothers plan that was *developed for the Capitol Campus* when making land use decisions involving property in the downtown Olympia waterfront. And the Project does not create any new impairment of the view corridor to and from the Capital Campus—the Capitol Center Building has existed in its current location for decades. Therefore, the appellants have failed to demonstrate that their interests are within the zone of interests that the City was required to consider in making its land use decision.

3.      Redressability[6]

The third condition the appellants are required to prove to demonstrate standing is that judgment in their favor would substantially eliminate or redress the prejudice caused by the land use decision. RCW 36.70C.060(2)(c). The appellants do not present any argument regarding redressability. However, based on their other arguments, both here and at the superior court, the appellants have asserted two possible prejudices caused by the land use decision: the interference with the view corridor and the failure to comply with City ordinances and SEPA/SMA regulations.

---

[6] We note that the appellants have not presented any argument or authority that even suggests that their claimed prejudice and injuries could be substantially eliminated or redressed by judgment in their favor as required by RCW 36.70C.060(2)(c). The appellants are required to show all of the four conditions for standing under the LUPA statute. RCW 36.70C.060(2) ("A person is aggrieved or adversely affected within the meaning of this section *only when all of the following conditions are present. . . .*") (emphasis added). And "[p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290, *review denied*, 136 Wn.2d 1015 (1998). However, we exercise our discretion and address the condition of redressability for the sake of thoroughness.

In their LUPA petition, the appellants asserted that the prejudice resulting from the land use decision and DNS would be redressed and eliminated because the project would be analyzed with an Environmental Impact Statement under the SMA and SEPA. However, the asserted interests related to the ordinances and regulations do not demonstrate a prejudice that could support standing under LUPA. *Nykriem*, 146 Wn.2d at 935. Therefore, even if they could be redressed by a judgment in the appellants' favor, it would still be insufficient to confer standing on the appellants.

And the appellants' prejudice from the Capitol Center Building's interference with the view corridor cannot be redressed by a judgment in the appellants' favor. Even if the appellants' prevail in preventing Views on 5th from obtaining a land use permit, the Capitol Center Building will still be standing. Because the Capitol Center Building exists and interferes with the view corridor to and from the Capitol Campus, preventing its renovation will simply result in the continued existence of a derelict building, it will not improve, preserve, or protect the view corridor. Therefore, judgment in the appellants' favor will not substantially eliminate or redress the prejudice the appellants' claim is caused by the land use decision.[7]

---

[7] The parties do not dispute the fourth condition, whether the appellants have exhausted administrative remedies. Although this condition is satisfied, satisfying one condition of statutory standing is insufficient to satisfy the standing requirements of LUPA. RCW 36.70C.060(2) ("A person is aggrieved or adversely affected within the meaning of this section *only when all of the following conditions are present. . . .*") (emphasis added).

ATTORNEY FEES

Views on 5th requests attorney fees on appeal under RAP 18.1 and RCW 4.84.370. And the City has joined in all arguments presented by Views on 5th. Under RAP 18.1 and RCW 4.84.370, both Views on 5th and the City are entitled to reasonable attorneys' fees on appeal.

Under RAP 18.1(a), we may award reasonable attorneys' fees if "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." RCW 4.84.370 governs the award of attorneys' fees for appellate review of land use decisions:

> (1) Notwithstanding any other provisions of this chapter, reasonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal before the court of appeals or the supreme court of a decision by a county, city, or town to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision. The court shall award and determine the amount of reasonable attorneys' fees and costs under this section if:
> (a) The prevailing party on appeal was the prevailing or substantially prevailing party before the county, city, or town, or in a decision involving a substantial development permit under chapter 90.58 RCW, the prevailing party on appeal was the prevailing party or the substantially prevailing party before the shoreline[s] hearings board; and
> (b) The prevailing party on appeal was the prevailing party or substantially prevailing party in all prior judicial proceedings.
> (2) In addition to the prevailing party under subsection (1) of this section, the county, city, or town whose decision is on appeal is considered a prevailing party if its decision is upheld at superior court and on appeal.

Views on 5th prevailed in front of the hearing examiner and at the superior court. Therefore, Views on 5th meets the requirements of RCW 4.84.370(1)(a) and (1)(b). And, because we affirm the superior court's order dismissing the appellants' LUPA petition based on lack of standing, Views on 5th is the prevailing party on appeal. Accordingly, Views on 5th is entitled to attorneys' fees on appeal.

No. 53063-5-II

The City's decisions—the SEPA DNS decision and granting the land use permit—were affirmed by the hearing examiner. The decisions were upheld at superior court, and we affirm the superior court's order dismissing the LUPA petition. Thus, the City's decisions are upheld on appeal. Therefore, the City is a prevailing party under RCW 4.84.370(2). Accordingly, the City is entitled to reasonable attorneys' fees on appeal.

We grant both Views on 5th and the City their attorney fees on appeal.

We affirm the superior court's order dismissing the LUPA petition for lack of standing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, C.J.

Melnick, J.

17