IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| OLYMPIA COALITION FOR ECOSYSTEMS PRESERVATION, | No. 56314-2-II |
| Appellant, | |
| v. | |
| CITY OF OLYMPIA; WEST BAY DEVELOPMENT GROUP, LLC; and HARDEL MUTUAL PLYWOOD CORPORATION, | UNPUBLISHED OPINION |
| Respondents. | |

CRUSER, A.C.J. – West Bay Development Group, LLC (West Bay) applied for a development agreement with the city of Olympia. Under the agreement, West Bay would develop five buildings with both residential and commercial uses, create a waterfront trail, and complete shoreline restoration consistent with an assessment previously completed by the city. The city issued a threshold determination under the State Environmental Policy Act (SEPA),[1] concluding that the development agreement would probably not have a significant adverse environmental impact. The parties then entered into the development agreement.

The Olympia Coalition for Ecosystems Preservation (the Coalition) challenged this decision, and the city hearing examiner granted summary judgment in favor of West Bay and the

---

[1] Ch. 43.21C RCW.

city. The Coalition then brought a petition under the land use petition act (LUPA)[2] in superior court, alleging that the city did not conduct an adequate review of the environmental impacts associated with approval of the development agreement. The superior court granted West Bay's motion to dismiss the petition and denied the Coalition's subsequent motion for reconsideration.

The Coalition appeals, arguing (1) that the superior court erred by dismissing its LUPA petition because the city's decision is a land use decision and the Coalition has standing to challenge it, (2) that the superior court erred by not considering a declaration that the Coalition submitted with its motion for reconsideration, and (3) that the hearing examiner erred by dismissing the Coalition's administrative appeal. The Coalition asks this court to (1) reverse the superior court's order dismissing its LUPA petition; (2) reverse the hearing examiner's order granting summary judgment; (3) reverse or vacate the city's threshold SEPA determination; (4) vacate the city's resolution adopting the development agreement; and (5) order the city to issue a new threshold determination and prepare an environmental impact statement under SEPA. West Bay and the city of Olympia both request attorney fees on appeal.

We hold that the Coalition cannot establish standing under LUPA to challenge the city's threshold determination regarding the development agreement. Accordingly, we affirm the superior court's order dismissing the Coalition's appeal. We deny West Bay and the city's requests for attorney fees on appeal under RCW 4.84.370.

---

[2] Ch. 36.70C RCW.

FACTS

West Bay purchased property, located at 1210 West Bay Drive NW in Olympia, with the intention of re-developing it. The development would include 478 rental housing units in five mixed-use buildings that would also include retail, restaurant, and recreation uses.

The Coalition is a public interest corporation with a mission to "protect, preserve, and restore the diverse ecosystems of Olympia, Washington." Clerk's Papers (CP) at 3. Its members include "outdoor recreational enthusiasts" who enjoy activities such as birdwatching, fishing, and hiking in the area. *Id.* For years, the Coalition has been purchasing land and restoring forest and riparian environments near the site that West Bay intends to develop. One of the parcels of land that the Coalition owns is directly across the street from the site.

In October 2020, West Bay submitted an application for a proposed development agreement to the city of Olympia. West Bay submitted a non-project[3] SEPA checklist along with the proposed agreement. In response to many of the checklist questions concerning the proposal's environmental impacts, West Bay indicated that the development agreement was "a non-project action" or "not a project specific proposal" without providing further information about possible impacts. *See, e.g.*, *Id.* at 75-76. West Bay further responded to some questions stating that any actual development would require further review under SEPA and compliance with the city's codes and regulations. In November 2020, the city issued a determination of non-significance (DNS)[4] for the development agreement, determining that the agreement probably would not have

---

[3] A "nonproject" action is "different or broader than a single site specific project, such as plans, policies, and programs." WAC 197-11-774.

[4] *See* WAC 197-11-340.

a significant adverse impact on the environment and that an environmental impact statement (EIS) was not required as to the development agreement.

The city council approved the agreement by resolution in March 2021, and the parties entered into the agreement the following day. Under the agreement, the development would also include public access amenities such as a waterfront trail and shoreline restoration "consistent with the recommendations identified in the *City of Olympia West Bay Environmental Restoration Assessment Final Report*." *Id.* at 17. The agreement also provides that the development project will require further review under SEPA "as well as a shoreline substantial development permit, site plan approval, design review, and issuance of construction, engineering, and building permits. The shoreline restoration component of the Project will also require approval and issuance of various federal and state permits." *Id.*

The Coalition sought administrative review of the city's DNS, and the parties filed cross-motions for summary judgment before the city hearing examiner. The Coalition requested that the DNS be vacated and that the city be required to prepare an EIS or, alternatively, for the city to issue a new threshold determination after completion of a new SEPA checklist. The Coalition argued that the proposal subject to SEPA review was the actual development project, which flows from theagreement. Accordingly, the Coalition believed the city's environmental review was inadequate. West Bay and the city argued that the proposal subject to SEPA review was the development agreement itself and that the city's level of review was appropriate.

The hearing examiner denied the Coalition's motion for summary judgment and granted summary judgment in favor of West Bay and the city of Olympia. The hearing examiner concluded that the city's decision to regard the development agreement itself as the proposal subject to SEPA

review was not clearly erroneous because the only application before the city at that time was for the development agreement; no permit applications had been submitted. Further, the hearing examiner concluded that the agreement "allows for consideration of possible development proposals in the future," rather than being the final action approving development, so the City's level of review was permissible. *Id.* at 50.

The Coalition filed a petition under LUPA in the superior court to challenge the development agreement, the city's resolution adopting the development agreement; the city's DNS; and the hearing examiner's order. West Bay filed a motion to dismiss the petition, arguing that (1) the development agreement was not a land use decision subject to review under LUPA, and (2) even if the agreement was reviewable under LUPA, the Coalition cannot establish standing under LUPA to challenge the agreement. The superior court granted West Bay's motion to dismiss.

The Coalition filed a motion for reconsideration, which included new information about a pre-submission conference between the city and Hardel Mutual Plywood Corporation,[5] which the Coalition described as the first step in the permit application process. The Coalition argued that "[s]ubstantial justice ha[d] not been done in the Court's decision to dismiss the Coalition's appeal" because West Bay had "painted an unrealistic picture of how advanced its permit application really was." *Id.* at 182. In support of this motion, the Coalition submitted a declaration by Daniel Einstein, the president of the Coalition's board of directors. Einstein's declaration described negotiations he allegedly witnessed between the city and a representative "on behalf of developer Hardel Mutual Plywood Corporation" at a pre-submission conference and explained that those negotiations were reflected in the final development agreement. *Id.* at 185. The superior court denied the Coalition's

---

[5] This is the entity from which West Bay purchased the project site.

motion for reconsideration after considering all materials submitted by the parties except for Einstein's declaration.

The Coalition appeals the superior court's orders granting West Bay's motion to dismiss and denying the Coalition's motion for reconsideration.

## DISCUSSION

West Bay and the city argue that the Coalition cannot establish standing under LUPA, so the trial court properly dismissed the Coalition's LUPA petition. We agree.

### STANDING UNDER LUPA

A. LEGAL PRINCIPLES

A person who is "aggrieved or adversely affected by [a] land use decision"[6] has standing to bring a petition under LUPA. RCW 36.70C.060(2).[7] A person must show all of the following conditions to establish that they are "aggrieved or adversely affected" by the decision:

> (a) The land use decision has prejudiced or is likely to prejudice that person;
> (b) That person's asserted interests are among those that the local jurisdiction was required to consider when it made the land use decision;
> (c) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the land use decision; and

---

[6] For purposes of the standing analysis, we assume without deciding that the development agreement is a land use decision that is reviewable under LUPA, i.e., the development agreement "relates to a project permit application," making it subject to LUPA appeals pursuant to the Local Projects Review Act. *See* RCW 36.70B.200.

[7] The statute provides, in relevant part:
> Standing to bring a land use petition under this chapter is limited to the following persons:
> (1) The applicant and the owner of property to which the land use decision is directed;
> (2) Another person aggrieved or adversely affected by the land use decision, or who would be aggrieved or adversely affected by a reversal or modification of the land use decision.

RCW 36.70C.060.

(d) The petitioner has exhausted his or her administrative remedies to the extent required by law.

RCW 36.70C.060(2). We review de novo an order on a motion to dismiss, as well as issues of jurisdiction and standing. *See Knight v. City of Yelm*, 173 Wn.2d 325, 336, 267 P.3d 973 (2011); *Nickum v. City of Bainbridge Island*, 153 Wn. App. 366, 373-74, 223 P.3d 1172 (2009).

B. ANALYSIS

West Bay and the city argue that the Coalition cannot establish the first and third elements of standing under LUPA. The Coalition argues that it has standing in its own right because the organization itself owns property adjacent to the project site that would be impacted by the project's alleged environmental harms. Further, the Coalition asserts that it has spent $3.5 million to preserve the environment surrounding the project site, and that the project's environmental impacts threaten those efforts. In addition, the Coalition argues that it has standing on behalf of its members, who have invested in the Coalition's property adjacent to the project site and use that property.

The Coalition has not shown that a judgment in its favor would substantially eliminate or redress any prejudice flowing from the development agreement. The Coalition asserts that, "regarding standing, we are concerned with whether inadequate SEPA review would harm the Coalition." Br. of Appellant at 37. Therefore, under the Coalition's own redressability analysis, it appears that the actual prejudice it seeks to redress is the city's alleged "failure" to provide SEPA-compliant environmental review at the agreement stage, "before locking in the rules to be applied to the proposal." *Id.* at 39. But the Coalition further argues that requiring the city to conduct "SEPA-compliant review would, indeed, redress the Coalition's environmental harms, in that an

environmental impact statement and associated mitigation or modification of the project (such as deleting the shoreline and tideland fill), would prevent those harms." *Id.* at 38.

It is unclear, then, whether the Coalition argues that it is prejudiced by the development agreement simply because the city allegedly did not comply with SEPA, or because the ultimate development would have adverse environmental impacts on the area. "An interest sufficient to support standing to sue, however, must be more than simply the abstract interest of the general public in having others comply with the law." *Chelan County v. Nykreim*, 146 Wn.2d 904, 935, 52 P.3d 1 (2002). In other words, it is not sufficient for the Coalition to argue that its alleged prejudice would be redressed by the city merely coming into compliance with SEPA.

Rather, the Coalition must explain how reversal of the DNS for the development agreement will specifically redress the environmental harms the Coalition alleges. But because the decision at issue is merely a development agreement, rescission of the agreement does nothing to prevent any alleged environmental harms.[8] As the Coalition concedes, West Bay is still required to apply for permits for development, at which point the city must issue other threshold determinations regarding the environmental impacts of the project. *See Anderson v. Pierce County*, 86 Wn. App. 290, 300-01, 936 P.2d 432 (1997) ("Under SEPA, before a local government processes a permit application for a private land use project, it must make a 'threshold determination' of whether the project is a 'major action significantly affecting the quality of the environment.") (quoting RCW 43.21C.030(2)(c)). Accordingly, the Coalition cannot establish that a favorable ruling would

---

[8] The Coalition's argument also presupposes that any further review under SEPA would necessarily result in a mitigation or modification of the project, which is unsupported by this record.

address its alleged prejudice and, therefore, cannot establish that it has standing to challenge the development agreement.[9]

## ATTORNEY FEES

Both West Bay and the city request attorney fees under RAP 18.1 and RCW 4.84.370. "In a LUPA appeal, the prevailing party on appeal is entitled to an award of its reasonable attorney fees as costs" under RCW 4.84.370(1). *Douglass Properties II, LLC v. City of Olympia*, 16 Wn. App. 2d 158, 175, 479 P.3d 1200, *review denied*, 197 Wn.2d 1018 (2021), *cert. denied*, 142 S. Ct. 900 (2022). This statute provides for attorney fees and costs on appeal of a land use decision. RCW 4.84.370(1). However, West Bay and the city argue that LUPA does not apply in this case. Therefore, we deny the requests for attorney fees by West Bay and the city.

## CONCLUSION

We hold that the Coalition cannot establish standing under LUPA to challenge the city's DNS for the development agreement. Accordingly, the trial court did not err when it dismissed the

---

[9] The Coalition also argues that the trial court abused its discretion when it did not consider the declaration by Einstein in support of the Coalition's motion for reconsideration. The Coalition's assignment of error reads: "The superior court also erred in its Order Denying Motion for Reconsideration wherein it rejected the second declaration of Daniel Einstein." Br. of Appellant at 2. The assignment does not say that the superior court erred in denying the motion; it merely says the superior court erred in not considering Einstein's declaration. Moreover, in the argument section related to this assignment of error, the Coalition does not argue that the trial court erred in denying the motion to reconsider. Because the Coalition does not argue or assign error to the superior court's denial of the motion to reconsider, or argue that the trial court would not have denied the motion to reconsider but for its erroneous refusal to consider the declaration, our consideration of this claim would be fruitless. Even if the trial court did err in not considering the declaration, without linking this claim to an argument that the trial court erred in denying the motion for reconsideration, any ruling on our part related to this claim is immaterial to our determination of the case. Accordingly, we decline to consider this claim of error.

No. 56314-2-II

Coalition's LUPA petition, and we affirm. We deny the requests for attorney fees by West Bay and the city under RCW 4.84.370.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, A.C.J.

We concur:

LEE, J.

VELJACIC, J.